## MAREK ET AL. *v.* CHESNY, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF CHESNY

No. 83–1437.   Argued December 5, 1984—Decided June 27, 1985

1

2

BURGER, C. J., delivered the opinion of the Court, in which WHITE, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., *post*, p. 12, and REHNQUIST, J., *post*, p. 13, filed concurring opinions. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and BLACK-MUN, JJ., joined, *post*, p. 13.

*Donald G. Peterson* argued the cause for petitioners. With him on the brief was *Elizabeth Hubbard*.

*Jerrold J. Ganzfried* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, Deputy Assistant Attorney General Kuhl, Katheryn A. Oberly, Robert S. Greenspan,* and *Barbara S. Woodall*.

*Victor J. Stone* argued the cause for respondent. On the brief was *James D. Montgomery.**

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether attorney's fees incurred by a plaintiff subsequent to an offer of settlement under Federal Rule of Civil Procedure 68 must be paid by the defendant under 42 U. S. C. § 1988, when the plaintiff recovers a judgment less than the offer.

I

Petitioners, three police officers, in answering a call on a domestic disturbance, shot and killed respondent's adult son. Respondent, in his own behalf and as administrator of his son's estate, filed suit against the officers in the United States District Court under 42 U. S. C. § 1983 and state tort law.

Prior to trial, petitioners made a timely offer of settlement "for a sum, including costs now accrued and attorney's fees,

---

*Briefs of *amici curiae* urging reversal were filed for the State of Florida by *Jim Smith,* Attorney General, *Mitchell D. Franks,* and *Linda K. Huber* and *Bruce A. Minnick,* Assistant Attorneys General; for the City of New York by *Frederick A. O. Schwarz, Jr., Leonard Koerner, Ronald E. Sternberg, Evelyn Jonas,* and *John P. Woods;* and for the Equal Employment Advisory Council by *Robert E. Williams, Douglas S. McDowell,* and *Thomas R. Bagby.*

Briefs of *amici curiae* urging affirmance were filed for the Alliance for Justice by *Laura Macklin;* for the American Civil Liberties Union et al. by *Roger Pascal, Burt Neuborne, E. Richard Larson,* and *Harvey Grossman;* for the Lawyers' Committee for Civil Rights Under Law by *Fred N. Fishman, Robert H. Kapp, Norman Redlich, William L. Robinson, Norman J. Chachkin, Harold R. Tyler, Jr.,* and *Sara E. Lister;* for the Committee on the Federal Courts of the Association of the Bar of the City of New York by *Sheldon H. Elsen, Michael W. Schwartz, Sidney S. Rosdeitcher, Edmund H. Kerr,* and *John G. Koeltl;* and for the NAACP Legal Defense and Educational Fund, Inc., by *Barry L. Goldstein, Julius LeVonne Chambers,* and *Charles Stephen Ralston.*

of ONE HUNDRED THOUSAND ($100,000) DOLLARS."
Respondent did not accept the offer. The case went to trial
and respondent was awarded $5,000 on the state-law "wrong-
ful death" claim, $52,000 for the § 1983 violation, and $3,000
in punitive damages.

Respondent filed a request for $171,692.47 in costs, includ-
ing attorney's fees. This amount included costs incurred
after the settlement offer. Petitioners opposed the claim for
postoffer costs, relying on Federal Rule of Civil Procedure
68, which shifts to the plaintiff all "costs" incurred subse-
quent to an offer of judgment not exceeded by the ultimate
recovery at trial. Petitioners argued that attorney's fees are
part of the "costs" covered by Rule 68. The District Court
agreed with petitioners and declined to award respondent
"costs, including attorney's fees, incurred after the offer of
judgment." 547 F. Supp. 542, 547 (ND Ill. 1982). The par-
ties subsequently agreed that $32,000 fairly represented the
allowable costs, including attorney's fees, accrued prior to
petitioners' offer of settlement.[1] Respondent appealed the
denial of postoffer costs.

The Court of Appeals reversed. 720 F. 2d 474 (CA7 1983).
The court rejected what it termed the "rather mechanical
linking up of Rule 68 and section 1988." *Id.*, at 478. It
stated that the District Court's reading of Rule 68 and § 1988,
while "in a sense logical," would put civil rights plaintiffs
and counsel in a "predicament" that "cuts against the grain of
section 1988." *Id.*, at 478, 479. Plaintiffs' attorneys, the
court reasoned, would be forced to "think very hard" before
rejecting even an inadequate offer, and would be deterred
from bringing good-faith actions because of the prospect of
losing the right to attorney's fees if a settlement offer more
favorable than the ultimate recovery were rejected. *Id.*, at
478–479. The court concluded that "[t]he legislators who
enacted section 1988 would not have wanted its effective-

---

[1] The District Court refused to shift to respondent any costs accrued by
petitioners. Petitioners do not contest that ruling.

ness blunted because of a little known rule of court." *Id.*, at 479.

We granted certiorari, 466 U. S. 949 (1984). We reverse.

## II

Rule 68 provides that if a timely pretrial offer of settlement is not accepted and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay *the costs incurred after the making of the offer.*" (Emphasis added.) The plain purpose of Rule 68 is to encourage settlement and avoid litigation. Advisory Committee Note on Rules of Civil Procedure, Report of Proposed Amendments, 5 F. R. D. 433, 483, n. 1 (1946), 28 U. S. C. App., p. 637; *Delta Air Lines, Inc.* v. *August,* 450 U. S. 346, 352 (1981). The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits. This case requires us to decide whether the offer in this case was a proper one under Rule 68, and whether the term "costs" as used in Rule 68 includes attorney's fees awardable under 42 U. S. C. § 1988.

## A

The first question we address is whether petitioners' offer was valid under Rule 68. Respondent contends that the offer was invalid because it lumped petitioners' proposal for damages with their proposal for costs. Respondent argues that Rule 68 requires that an offer must separately recite the amount that the defendant is offering in settlement of the substantive claim and the amount he is offering to cover accrued costs. Only if the offer is bifurcated, he contends, so that it is clear how much the defendant is offering for the substantive claim, can a plaintiff possibly assess whether it would be wise to accept the offer. He apparently bases this argument on the language of the Rule providing that the defendant "may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property

or to the effect specified in his offer, *with costs then accrued*" (emphasis added).

The Court of Appeals rejected respondent's claim, holding that "an offer of the money or property or to the specified effect is, by force of the rule itself, 'with'—that is, plus 'costs then accrued,' whatever the amount of those costs is." 720 F. 2d, at 476. We, too, reject respondent's argument. We do not read Rule 68 to require that a defendant's offer itemize the respective amounts being tendered for settlement of the underlying substantive claim and for costs.

The critical feature of this portion of the Rule is that the offer be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued*. In other words, the drafters' concern was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants. If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion, see *Delta Air Lines, Inc.* v. *August, supra,* at 362, 365 (POWELL, J., concurring), it determines to be sufficient to cover the costs. In either case, however, the offer has *allowed* judgment to be entered against the defendant both for damages caused by the challenged conduct and for costs. Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid.

This construction of the Rule best furthers the objective of the Rule, which is to encourage settlements. If defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would under-

standably be reluctant to make settlement offers. As the Court of Appeals observed, "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff." 720 F. 2d, at 477.

Contrary to respondent's suggestion, reading the Rule in this way does not frustrate plaintiffs' efforts to determine whether defendants' offers are adequate. At the time an offer is made, the plaintiff knows the amount in damages caused by the challenged conduct. The plaintiff also knows, or can ascertain, the costs then accrued. A reasonable determination whether to accept the offer can be made by simply adding these two figures and comparing the sum to the amount offered. Respondent is troubled that a plaintiff will not know whether the offer on the substantive claim would be exceeded at trial, but this is so whenever an offer of settlement is made. In any event, requiring itemization of damages separate from costs would not in any way help plaintiffs know in advance whether the judgment at trial will exceed a defendant's offer.

Curiously, respondent also maintains that petitioners' settlement offer did not exceed the judgment obtained by respondent. In this regard, respondent notes that the $100,000 offer is not as great as the sum of the $60,000 in damages, $32,000 in preoffer costs, and $139,692.47 in claimed postoffer costs. This argument assumes, however, that postoffer costs should be included in the comparison. The Court of Appeals correctly recognized that postoffer costs merely offset part of the expense of continuing the litigation to trial, and should not be included in the calculus. *Id.*, at 476.

## B

The second question we address is whether the term "costs" in Rule 68 includes attorney's fees awardable under 42 U. S. C. § 1988. By the time the Federal Rules of Civil

Procedure were adopted in 1938, federal statutes had authorized and defined awards of costs to prevailing parties for more than 85 years. See Act of Feb. 26, 1853, 10 Stat. 161; see generally *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240 (1975). Unlike in England, such "costs" generally had not included attorney's fees; under the "American Rule," each party had been required to bear its own attorney's fees. The "American Rule" as applied in federal courts, however, had become subject to certain exceptions by the late 1930's. Some of these exceptions had evolved as a product of the "inherent power in the courts to allow attorney's fees in particular situations." *Alyeska, supra,* at 259. But most of the exceptions were found in federal statutes that directed courts to award attorney's fees as part of costs in particular cases. 421 U. S., at 260–262.

Section 407 of the Communications Act of 1934, for example, provided in relevant part that, "[i]f the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 47 U. S. C. § 407. There was identical language in § 3(p) of the Railway Labor Act, 45 U. S. C. § 153(p) (1934 ed.). Section 40 of the Copyright Act of 1909, 17 U. S. C. § 40 (1934 ed.), allowed a court to "award to the prevailing party a reasonable attorney's fee as part of the costs." And other statutes contained similar provisions that included attorney's fees as part of awardable "costs." See, *e. g.*, the Clayton Act, 15 U. S. C. § 15 (1934 ed.); the Securities Act of 1933, 15 U. S. C. § 77k(e) (1934 ed.); the Securities Exchange Act of 1934, 15 U. S. C. §§ 78i(e), 78r(a) (1934 ed.).

The authors of Federal Rule of Civil Procedure 68 were fully aware of these exceptions to the American Rule. The Advisory Committee's Note to Rule 54(d), 28 U. S. C. App., p. 621, contains an extensive list of the federal statutes which allowed for costs in particular cases; of the 35 "statutes as to costs" set forth in the final paragraph of the Note, no fewer than 11 allowed for attorney's fees as part of costs. Against this background of varying definitions of "costs," the drafters

of Rule 68 did not define the term; nor is there any explanation whatever as to its intended meaning in the history of the Rule.

In this setting, given the importance of "costs" to the Rule, it is very unlikely that this omission was mere oversight; on the contrary, the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68. See, e. g., *Fulps* v. *Springfield, Tenn.*, 715 F. 2d 1088, 1091–1095 (CA6 1983); *Waters* v. *Heublein, Inc.*, 485 F. Supp. 110, 113–117 (ND Cal. 1979); *Scheriff* v. *Beck*, 452 F. Supp. 1254, 1259–1260 (Colo. 1978). See also *Delta Air Lines, Inc.* v. *August*, 450 U. S., at 362–363 (POWELL, J., concurring).

Here, respondent sued under 42 U. S. C. § 1983. Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, as amended, 42 U. S. C. § 1988, a prevailing party in a § 1983 action may be awarded attorney's fees "as part of the costs." Since Congress expressly included attorney's fees as "costs" available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68. This "plain meaning" interpretation of the interplay between Rule 68 and § 1988 is the only construction that gives meaning to each word in both Rule 68 and § 1988.[2]

_____

[2] Respondent suggests that *Roadway Express, Inc.* v. *Piper*, 447 U. S. 752 (1980), requires a different result. *Roadway Express,* however, is not relevant to our decision today. In *Roadway,* attorney's fees were sought as part of costs under 28 U. S. C. § 1927, which allows the imposition of costs as a penalty on attorneys for vexatiously multiplying litigation. We held in *Roadway Express* that § 1927 came with its own statutory definition of costs, and that this definition did not include attorney's fees. The critical distinction here is that Rule 68 does not come with a definition of

Unlike the Court of Appeals, we do not believe that this "plain meaning" construction of the statute and the Rule will frustrate Congress' objective in § 1988 of ensuring that civil rights plaintiffs obtain "'effective access to the judicial process.'" *Hensley* v. *Eckerhart*, 461 U. S. 424, 429 (1983), quoting H. R. Rep. No. 94–1558, p. 1 (1976). Merely subjecting civil rights plaintiffs to the settlement provision of Rule 68 does not curtail their access to the courts, or significantly deter them from bringing suit. Application of Rule 68 will serve as a disincentive for the plaintiff's attorney to continue litigation after the defendant makes a settlement offer. There is no evidence, however, that Congress, in considering § 1988, had any thought that civil rights claims were to be on any different footing from other civil claims insofar as settlement is concerned. Indeed, Congress made clear its concern that civil rights plaintiffs not be penalized for "helping to lessen docket congestion" by settling their cases out of court. See H. R. Rep. No. 94–1558, *supra,* at 7.

Moreover, Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits. Civil rights plaintiffs — along with other plaintiffs — who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected. But, since the Rule is neutral, many civil rights plaintiffs will benefit from the offers of settlement encouraged by Rule 68. Some plaintiffs will receive compensation in settlement where, on trial, they might not have recovered, or would have recovered less than what was offered. And, even for those who would prevail at trial, settlement will provide them with compensation at an earlier date without the burdens, stress, and time of litigation. In short, settlements rather than litigation will serve the interests of plaintiffs as well as defendants.

---

costs; rather, it incorporates the definition of costs that otherwise applies to the case.

To be sure, application of Rule 68 will require plaintiffs to "think very hard" about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates. This effect of Rule 68, however, is in no sense inconsistent with the congressional policies underlying § 1983 and § 1988. Section 1988 authorizes courts to award only "reasonable" attorney's fees to prevailing parties. In *Hensley* v. *Eckerhart, supra,* we held that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." *Id.,* at 436. We specifically noted that prevailing at trial "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Ibid.* In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney. This case presents a good example: the $139,692 in postoffer legal services resulted in a recovery $8,000 less than petitioners' settlement offer. Given Congress' focus on the success achieved, we are not persuaded that shifting the postoffer costs to respondent in these circumstances would in any sense thwart its intent under § 1988.

Rather than "cutting against the grain" of § 1988, as the Court of Appeals held, we are convinced that applying Rule 68 in the context of a § 1983 action is consistent with the policies and objectives of § 1988. Section 1988 encourages plaintiffs to bring meritorious civil rights suits; Rule 68 simply encourages settlements. There is nothing incompatible in these two objectives.

## III

Congress, of course, was well aware of Rule 68 when it enacted § 1988, and included attorney's fees as part of recoverable costs. The plain language of Rule 68 and § 1988 subjects such fees to the cost-shifting provision of Rule 68. Nothing revealed in our review of the policies underlying § 1988 constitutes "the necessary clear expression of congres-

sional intent" required "to exempt . . . [the] statute from the operation of" Rule 68. *Califano* v. *Yamasaki*, 442 U. S. 682, 700 (1979). We hold that petitioners are not liable for costs of $139,692 incurred by respondent after petitioners' offer of settlement.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE POWELL, concurring.

In *Delta Airlines, Inc.* v. *August*, 450 U. S. 346 (1981), the offer under Rule 68 stated that it was *"in the amount of $450, which shall include attorney's fees,* together with costs accrued to date." *Id.*, at 365. In a brief concurring opinion, I expressed the view that this offer did not comport with the Rule's requirements. It seemed to me that an offer of judgment should consist of two identified components: (i) the substantive relief proposed, and (ii) costs, including a reasonable attorney's fee. The amount of the fee ultimately should be within the discretion of the court if the offer is accepted. In questioning the form of the offer in *Delta*, I was influenced in part by the fact that it was a Title VII case. I concluded that the "'costs' component of a Rule 68 offer of judgment in a Title VII case must include reasonable attorney's fees accrued to the date of the offer." *Id.*, at 363. My view, however, as to the specificity of the "substantive relief" component of the offer did not depend solely on the fact that *Delta* was a Title VII case.

No other Justice joined my *Delta* concurrence. The Court's decision was upon a different ground. Although I think it the better practice for the offer of judgment expressly to identify the components, it is important to have a Court for a clear interpretation of Rule 68. I noted in *Delta* that "parties to litigation and the public as a whole have an interest—often an overriding one—in settlement rather than exhaustion of protracted court proceedings." *Ibid.* The purpose of Rule 68 is to "facilitat[e] the early resolution of marginal suits in which the defendant perceives the claim to

be without merit, and the plaintiff recognizes its speculative nature." *Ibid.* See also *id.*, at 363, n. 1. We have now agreed as to what specifically is required by Rule 68.

Accordingly, I join the opinion of the Court.

JUSTICE REHNQUIST, concurring.

In *Delta Airlines, Inc.* v. *August*, 450 U. S. 346 (1981), I expressed in dissent the view that the term "costs" in Rule 68 did not include attorney's fees. Further examination of the question has convinced me that this view was wrong, and I therefore join the opinion of THE CHIEF JUSTICE. Cf. *McGrath* v. *Kristensen*, 340 U. S. 162, 176 (1950) (Jackson, J. concurring).

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

The question presented by this case is whether the term "costs" as it is used in Rule 68 of the Federal Rules of Civil Procedure[1] and elsewhere throughout the Rules refers sim-

---

[1] Rule 68 provides:

"At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability."

ply to those taxable costs defined in 28 U. S. C. § 1920 and traditionally understood as "costs"—court fees, printing expenses, and the like[2]—or instead includes attorney's fees when an underlying fees-award statute happens to refer to fees "as part of" the awardable costs. Relying on what it recurrently emphasizes is the "plain language" of one such statute, 42 U. S. C. § 1988,[3] the Court today holds that a prevailing civil rights litigant entitled to fees under that statute is *per se* barred by Rule 68 from recovering any fees for work performed after rejecting a settlement offer where he ultimately recovers less than the proffered amount in settlement.

I dissent. The Court's reasoning is wholly inconsistent with the history and structure of the Federal Rules, and its application to the over 100 attorney's fees statutes enacted by Congress will produce absurd variations in Rule 68's op-

---

[2] Section 1920 provides:

"A judge or clerk of any court of the United States may tax as costs the following:

"(1) Fees of the clerk and marshal;

"(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

"(3) Fees and disbursements for printing and witnesses;

"(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

"(5) Docket fees under section 1923 of this title;

"(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

"A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

[3] Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, as amended, 42 U. S. C. § 1988. That section provides in relevant part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

eration based on nothing more than picayune differences in statutory phraseology. Neither Congress nor the drafters of the Rules could possibly have intended such inexplicable variations in settlement incentives. Moreover, the Court's interpretation will "seriously undermine the purposes behind the attorney's fees provisions" of the civil rights laws, *Delta Air Lines, Inc.* v. *August,* 450 U. S. 346, 378 (1981) (REHNQUIST, J., dissenting)—provisions imposed by Congress pursuant to § 5 of the Fourteenth Amendment.[4] Today's decision therefore violates the most basic limitations on our rulemaking authority as set forth in the Rules Enabling Act, 28 U. S. C. § 2072, and as summarized in *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240 (1975). Finally, both Congress and the Judicial Conference of the United States have been engaged for years in considering possible amendments to Rule 68 that would bring attorney's fees within the operation of the Rule. That process strongly suggests that Rule 68 has not previously been viewed as governing fee awards, and it illustrates the wisdom of deferring to other avenues of amending Rule 68 rather than ourselves engaging in "standardless judicial lawmaking." *Delta Air Lines, Inc.* v. *August, supra,* at 378 (REHNQUIST, J., dissenting).

## I

The Court's "plain language" analysis, *ante,* at 11, goes as follows: Section 1988 provides that a "prevailing party" may recover "a reasonable attorney's fee as part of the costs." Rule 68 in turn provides that, where an offeree obtains a judgment for less than the amount of a previous settlement offer, "the offeree must pay the costs incurred after the making of the offer." Because "attorney's fees" are "costs," the Court concludes, the "plain meaning" of Rule 68 *per se* prohibits a prevailing civil rights plaintiff from recovering fees

---

[4] See S. Rep. No. 94–1011, pp. 5–6 (1976); H. R. Rep. No. 94–1558, pp. 7, n. 14, 8–9 (1976).

incurred after he rejected the proposed out-of-court settlement. *Ante*, at 9.

The Court's "plain language" approach is, as Judge Posner's opinion for the court below noted, "in a sense logical." 720 F. 2d 474, 478 (CA7 1983). However, while the starting point in interpreting statutes and rules is always the plain words themselves, "[t]he particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding they convey when used in the particular act."[5] We previously have been confronted with "superficially appealing argument[s]" strikingly similar to those adopted by the Court today, and we have found that they "cannot survive careful consideration." *Roadway Express, Inc.* v. *Piper*, 447 U. S. 752, 758 (1980). So it is here.

In *Roadway Express*, the petitioner argued that under 28 U. S. C. § 1927 (1976 ed.) (which at that time allowed for the imposition of "excess costs" on an attorney who "unreasonably and vexatiously" delayed court proceedings),[6] "costs"

---

[5] 2A C. Sands, Sutherland on Statutory Construction § 46.07, p. 110 (4th ed. 1984). See also *United States* v. *Campos-Serrano*, 404 U. S. 293, 298 (1971) ("If an absolutely literal reading of a statutory provision is irreconcilably at war with the clear congressional purpose, a less literal construction must be considered"); *Lynch* v. *Overholser*, 369 U. S. 705, 710 (1962) ("The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, . . . for 'literalness may strangle meaning' "); *United States* v. *Brown*, 333 U. S. 18, 25–26 (1948) ("The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language"). Cf. *Harrison* v. *Northern Trust Co.*, 317 U. S. 476, 479 (1943) ("words are inexact tools at best").

[6] That section provided that any attorney "who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs." The section was amended after *Roadway Express* to require the payment of "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Pub. L. 96–349, § 3, 94 Stat. 1156, 28 U. S. C. § 1927.

should be interpreted to include attorney's fees when the underlying fees-award statute provided for fees "as part of the costs." We rejected that argument, concluding that "costs" as it was used in § 1927 had a well-settled meaning limited to the traditional taxable items of costs set forth in 28 U. S. C. § 1920. 447 U. S., at 759–761. We found that Congress has consistently "sought to standardize the treatment of costs in federal courts, to 'make them uniform—make the law explicit and definite,'" and that the petitioner's interpretation "could result in virtually random application of § 1927 on the basis of other laws that do not address the problem of controlling abuses of judicial processes." *Id.*, at 761–762. Specifically, allowing the definition of "costs" to vary depending on the phraseology of the underlying fees-award statute

> "would create a two-tier system of attorney sanctions. . . . Under Roadway's view of § 1927, lawyers in cases brought under those statutes [authorizing fees *as part of the costs*] would face stiffer penalties for prolonging litigation than would other attorneys. There is no persuasive justification for subjecting lawyers in different areas of practice to differing sanctions for dilatory conduct. A court's processes may be as abused in a commercial case as in a civil rights action. Without an express indication of congressional intent, we must hesitate to reach the imaginative outcome urged by Roadway, particularly when a more plausible construction flows from [viewing 'costs' uniformly as limited to those items set forth in § 1920]." *Id.*, at 762–763.

The Court today restricts its discussion of *Roadway* to a single footnote, urging that that case "is not relevant to our decision" because "§ 1927 came with its own statutory definition of costs" whereas "Rule 68 does not come with a definition of costs." *Ante*, at 9–10, n. 2. But this purported "distinction" merely begs the question. As in *Roadway*, the question we face is whether a cost-shifting provision "come[s] with a definition of costs"—that set forth in § 1920 in an effort

"to standardize the treatment of costs in federal courts," *Roadway Express, Inc.* v. *Piper, supra*, at 761—or instead may vary widely in meaning depending on the phraseology of the underlying fees-award statute.[7] The parties' arguments in this case and in *Roadway* are virtually interchangeable, and our analysis is not much advanced simply by the conclusory statement that the cases are different.

For a number of reasons, "costs" as that term is used in the Federal Rules should be interpreted uniformly in accordance with the definition of costs set forth in § 1920:

*First.* The limited history of the costs provisions in the Federal Rules suggests that the drafters intended "costs" to mean only taxable costs traditionally allowed under the common law or pursuant to the statutory predecessor of § 1920.[8]

---

[7] Taken to its logical limit, the Court's argument that the Federal Rules come with no "definition of costs" would mean that courts in applying the Rules' costs provisions could altogether ignore § 1920 in defining taxable costs. Surely the Court cannot mean to endorse such a result. The proper question, it seems to me, is instead whether § 1920 sets forth the *only* "definition" of costs for purposes of applying the Rules or whether courts may pick and choose from among other statutes in adding items to the enumeration set forth in § 1920.

[8] Rule 68 modifies the general cost-shifting provisions set forth in Rule 54(d). See *Delta Air Lines, Inc.* v. *August*, 450 U. S. 346, 351–356 (1981); n. 13, *infra*. The Advisory Committee's Notes to Rule 54(d) emphasized that the terms of the statutory predecessor of § 1920 were "unaffected by this rule"—suggesting that the drafters did not intend to alter the uniform definition of costs set forth in that statute. 28 U. S. C. App., p. 621. Moreover, the drafters cited to an article as authority on "the present rule" which emphasized "the fundamental, essential, and common law doctrines and distinctions as to *costs* and *fees*. The distinction between costs and fees should be carefully borne in mind . . . ." Payne, Costs in Common Law Actions in the Federal Courts, 21 Va. L. Rev. 397, 398 (1935) (emphasis in original), cited at 28 U. S. C. App., p. 621. The article continued, stating that the statutory predecessor of § 1920 "was designed to reduce the expense of proceedings in the federal courts *and to secure uniform rules* throughout the United States. The intention of Congress to establish the provisions of the Act of 1853 as the *exclusive* law of costs in

Nowhere was it suggested that the meaning of taxable "costs" might vary from case to case depending on the language of the substantive statute involved—a practice that would have cut against the drafters' intent to create uniform procedures applicable to *"every* action" in federal court. Fed. Rule Civ. Proc. 1.[9]

*Second.* The Rules provide that "costs" may automatically be taxed by the clerk of the court on one day's notice, Fed. Rule Civ. Proc. 54(d)—strongly suggesting that "costs" were intended to refer only to those routine, readily determinable charges that could appropriately be left to a clerk, and as to which a single day's notice of settlement would be appropriate. Attorney's fees, which are awardable only by the *court*

---

the United States courts seems clear under the declarations and interdictions of that act. It would seem that the object . . . was to substitute . . . its own provisions *and secure uniform rules." Id.,* at 404 (emphasis added).

[9] "There is probably no provision in the Federal Rules that is more important than this mandate." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1029, p. 127 (1969) (Wright & Miller). See also 2 J. Moore, Federal Practice ¶ 1.13[1], p. 285 (2d ed. 1985) (Moore).

The Court's major argument is that, when Rule 68 was drafted in 1938, there already was a disparity in the phraseology of fees-award statutes such that many provisions authorized the award of fees "as" costs, and that it is therefore "very unlikely" that the drafters intended a uniform definition of costs. *Ante,* at 7–9. As set forth above, however, the limited history strongly indicates that the drafters intended to secure uniform rules on costs and that the uniform definition contained in the statutory predecessor of § 1920 would be "unaffected" by the Rules. See *supra,* at 18 and this page, and n. 8. Moreover, application of the Court's interpretation to statutes in effect in 1938 would have led to inexplicable variations in settlement incentives, see n. 32, *infra*—variations for which the Court has no plausible explanation. In the absence of *any* indication that the drafters or Congress intended a "schizophrenic" application of the Rules, *Delta Air Lines, Inc.* v. *August, supra,* at 353, "the most reasonable inference," *ante,* at 9, contrary to the Court's pronouncement, is that Rule 68 was intended to conform to § 1920 and to the general policy of uniformity in applying the Rules.

and which frequently entail lengthy disputes and hearings,[10] obviously do not fall within that category.

*Third.* When particular provisions of the Federal Rules are *intended* to encompass attorney's fees, they do so *explicitly.* Eleven different provisions of the Rules authorize a court to award attorney's fees as "expenses" in particular circumstances, demonstrating that the drafters knew the difference, and intended a difference, between "costs," "expenses," and "attorney's fees."[11]

*Fourth.* With the exception of one recent Court of Appeals opinion and two recent District Court opinions, the Court can point to no authority suggesting that courts or attorneys have ever viewed the cost-shifting provisions of Rule 68 as including attorney's fees.[12] Yet Rule 68 has been in effect for 47 years, and potentially could have been applied to numerous fee statutes during this time. "The fact that the defense

---

[10] See generally 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees, chs. 23–24 (1984); 3 *id.*, chs. 25–27.

[11] See Fed. Rules Civ. Proc. 11 (signing of pleadings, motions, or other papers in violation of the Rule), 16(f) (noncompliance with rules respecting pretrial conferences), 26(g) (certification of discovery requests, responses, or objections made in violation of Rule), 30(g)(1) (failure of party giving notice of a deposition to attend), 30(g)(2) (failure of party giving notice of a deposition to serve subpoena on witness), 37(a)(4) (conduct necessitating motion to compel discovery), 37(b) (failure to obey discovery orders), 37(c) (expenses on failure to admit), 37(d) (failure of party to attend at own deposition, serve answers to interrogatories, or respond to request for inspection), 37(g) (failure to participate in good faith in framing of a discovery plan), 56(g) (summary-judgment affidavits made in bad faith).

[12] *Ante,* at 9, citing *Fulps* v. *Springfield, Tenn.* 715 F. 2d 1088, 1091–1095 (CA6 1983); *Waters* v. *Heublein, Inc.,* 485 F. Supp. 110, 113–117 (ND Cal. 1979); *Scheriff* v. *Beck,* 452 F. Supp. 1254, 1259–1260 (Colo. 1978). For cases to the contrary, see, *e. g., Dowdell* v. *Apopka, Fla.,* 698 F. 2d 1181, 1188–1189, and n. 2 (CA11 1983); *White* v. *New Hampshire Dept. of Employment Security,* 629 F. 2d 697, 702–703 (CA1 1980), rev'd on other grounds, 455 U. S. 445 (1982); *Piguead* v. *McLaren,* 699 F. 2d 401, 403 (CA7 1983); *Association for Retarded Citizens* v. *Olson,* 561 F. Supp. 495, 498 (ND 1982), modified, 713 F. 2d 1384 (CA8 1983); *Greenwood* v. *Stevenson,* 88 F. R. D. 225, 231–232 (RI 1980).

bar did not develop a practice of seeking" to shift or reduce fees under Rule 68 "is persuasive evidence that trial lawyers have interpreted the Rule in accordance with" the definition of costs in § 1920. *Delta Air Lines, Inc.* v. *August,* 450 U. S., at 360.

*Fifth.* We previously have held that words and phrases in the Federal Rules must be given a consistent usage and be read *in pari materia,* reasoning that to do otherwise would "attribute a schizophrenic intent to the drafters." *Id.,* at 353. Applying the Court's "plain language" approach consistently throughout the Rules, however, would produce absurd results that would turn statutes like § 1988 on their heads and plainly violate the restraints imposed on judicial rulemaking by the Rules Enabling Act. For example, Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs."[13] Similarly, the *plain* language of Rule 68 provides that a plaintiff covered by the Rule "must pay the costs incurred after the making of the offer"—language requiring the plaintiff to bear both his postoffer costs and the defendant's postoffer costs.[14] If "costs" as used in these provisions were interpreted to include attorney's fees by virtue of the wording of § 1988, losing civil rights plaintiffs would be required by the "plain language" of Rule 54(d) to pay the defendant's attorney's fees, and prevailing plaintiffs falling within Rule 68 would be required to bear the defendant's postoffer attorney's fees.

---

[13] Rule 54(d) provides in full:

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

[14] This is precisely how Rule 68 has been applied with respect to ordinary items of taxable costs. See generally 12 Wright & Miller §§ 3001, 3005; 7 Moore ¶ 68.06.

Had it addressed this troubling consequence of its "plain language" approach, perhaps the Court would have acknowledged that such a reading would conflict directly with § 1988, which allows an award of attorney's fees to a prevailing defendant *only* where "the suit was vexatious, frivolous, or brought to harass or embarrass the defendant,"[15] and that the substantive standard set forth in § 1988 therefore overrides the otherwise "plain meaning" of Rules 54(d) and 68. But that is precisely the point, and the Court cannot have it both ways. Unless we are to engage in "schizophrenic" construction, *Delta Air Lines, Inc.* v. *August, supra,* at 360, the word "costs" as it is used in the Federal Rules either does or does not allow the inclusion of attorney's fees. If the word "costs" does subsume attorney's fees, this "would alter fundamentally the nature of" civil-rights attorney's fee legislation. *Roadway Express, Inc.* v. *Piper,* 447 U. S., at 762. To avoid this extreme result while still interpreting Rule 68 to include fees in *some* circumstances, however, the Court would have to "select on an ad hoc basis those features of § 1988 . . . that should be read into" Rule 68—a process of construction that would constitute nothing short of "standardless judicial lawmaking." *Ibid.*[16]

---

[15] *Hensley* v. *Eckerhart,* 461 U. S. 424, 429, n. 2 (1983). See also *Hughes* v. *Rowe,* 449 U. S. 5, 14–16 (1980) *(per curiam); Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412, 421 (1978); H. R. Rep. No. 94–1558, at 7.

[16] It also might be argued that a defendant may not recover postoffer attorney's fees under the "plain language" of Rule 68 because he is not the "prevailing party" within the meaning of § 1988. We have made clear, however, that a party may "prevail" under § 1988 on some elements of the litigation but not on others. See, *e. g., Hensley* v. *Eckerhart, supra,* at 434–437. Thus while the plaintiff would prevail for purposes of preoffer fees, the defendant could be viewed as the prevailing party for purposes of the postoffer fees. Shifting fees to the defendant in such circumstances would plainly violate § 1988 for the reasons set forth above in text, and the substantive standards of § 1988 must therefore override the otherwise "plain language" approach taken by the Court.

*Sixth.* As with all of the Federal Rules, the drafters intended Rule 68 to have a uniform, consistent application in *all* proceedings in federal court. See *supra*, at 19, and n. 9. In accordance with this intent, Rule 68 should be interpreted to provide uniform, consistent incentives "to encourage the settlement of litigation." *Delta Air Lines, Inc.* v. *August, supra*, at 352. Yet today's decision will lead to dramatically different settlement incentives depending on minor variations in the phraseology of the underlying fees-award statutes — distinctions that would appear to be nothing short of irrational and for which the Court has no plausible explanation.

Congress has enacted well over 100 attorney's fees statutes, many of which would appear to be affected by today's decision. As the Appendix to this dissent illustrates, Congress has employed a variety of slightly different wordings in these statutes. It sometimes has referred to the awarding of "attorney's fees *as part of* the costs," to "costs *including* attorney's fees," and to "attorney's fees and *other* litigation costs." Under the "plain language" approach of today's decision, Rule 68 will operate to *include* the potential loss of otherwise recoverable attorney's fees as an incentive to settlement in litigation under these statutes. But Congress frequently has referred in other statutes to the awarding of "costs *and* a reasonable attorney's fee," of "costs *together* with a reasonable attorney's fee," or simply of "attorney's fees" without reference to costs. Under the Court's "plain language" analysis, Rule 68 obviously will *not* include the potential loss of otherwise recoverable attorney's fees as a settlement incentive in litigation under these statutes because they do not refer to fees "as" costs.[17]

---

[17] Congress also has enacted statutes providing for the award of "costs and expenses, including attorney's fees." See *infra*, at 24. It is unclear how the "plain language" of these provisions interacts with Rule 68. If "including attorney's fees" is read as referring at least in part to "costs,"

The result is to sanction a senseless patchwork of fee shifting that flies in the face of the fundamental purpose of the Federal Rules—the provision of uniform and consistent procedure in federal courts. Such a construction will "introduce into [Rule 68] distinctions unrelated to its goal . . . and [will] result in virtually random application of the Rule." *Roadway Express, Inc.* v. *Piper, supra,* at 761–762. For example, two consumer safety statutes, the Motor Vehicle Information and Cost Savings Act[18] and the Consumer Product Safety Act,[19] were enacted in the same congressional session and are similar in purpose and structure—they both authorize the promulgation of safety standards, provide for private rights of action for violations of their requirements, and authorize awards of attorney's fees. The Motor Vehicle Act, however, authorizes the award of fees *and* costs,[20] while the Consumer Product Safety Act authorizes costs *including* fees.[21] Under today's decision a successful plaintiff will, where the requirements of Rule 68 are otherwise met, be barred from recovering otherwise reasonable attorney's fees for a defective toaster (under the Consumer Product Safety Act) but not for a defective bumper (under the Motor Vehicle Act). Yet nothing in the history of either Act, or in the history of Rule 68, supports such a bizarre differentiation.

The untenable character of such distinctions is further illustrated by reference to the various civil rights laws. For example, suits involving alleged discrimination in housing are

---

fees awards under these statutes are subject to Rule 68. If "including attorney's fees" is more naturally read as modifying only the preceding word, "expenses," fees awards under these statutes are not governed by Rule 68.

[18] 86 Stat. 947, as amended, 15 U. S. C. § 1901 *et seq.*

[19] 86 Stat. 1207, as amended, 15 U. S. C. § 2051 *et seq.*

[20] 86 Stat. 955, 15 U. S. C. § 1918(a) ("costs and a reasonable attorney's fee shall be awarded").

[21] 86 Stat. 1226, as amended, 15 U. S. C. §§ 2072(a), 2073 ("costs of suit, including reasonable attorney's fees").

frequently brought under both the Fair Housing Act of 1968[22] and 42 U. S. C. § 1982,[23] and suits involving alleged gender discrimination are often brought under both the Equal Pay Act of 1963[24] and Title VII of the Civil Rights Act of 1964.[25] Yet because of the variations in wording of the attorney's fee provisions of these statutes, today's decision will require that fees be *excluded* from Rule 68 for purposes of the Fair Housing Act[26] but *included* for purposes of § 1982,[27] and that fees be *excluded* for purposes of the Equal Pay Act[28] but *included* for purposes of Title VII.[29] It will be difficult enough to apply Rule 68 to the numerous cases seeking relief under both "fees as costs" and "fees and costs" statutes.[30] More im-

---

[22] 82 Stat. 81, 42 U. S. C. § 3601 *et seq.*

[23] That section provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." See generally *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409 (1968).

[24] 77 Stat. 56, 29 U. S. C. § 206(d).

[25] 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*

[26] 82 Stat. 88, 42 U. S. C. § 3612(c) ("court costs *and* reasonable attorney fees") (emphasis added).

[27] Attorney's fee awards in actions under § 1982 are governed by the terms of § 1988. See n. 3, *supra.*

[28] Attorney's fee awards in actions under the Equal Pay Act are governed by the fee provisions of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1069, as amended, 29 U. S. C. § 216(b) ("a reasonable attorney's fee . . . and costs of the action") (emphasis added).

[29] 78 Stat. 259, 42 U. S. C. § 2000e–5(k) ("a reasonable attorney's fee as part of the costs") (emphasis added).

[30] As we noted in *Hensley* v. *Eckerhart*, 461 U. S., at 435, many civil rights cases "involve a common core of facts or will be based on related legal theories" that make it difficult to apportion an attorney's fee request among various claims. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Ibid.* The Court offers no guidance on how lower courts are to go about applying the *Hensley* standard in cases where Rule 68 requires conflicting results on closely related claims.

portantly, there is absolutely no reason to believe that either Congress or the drafters of the Rules were more eager to induce settlement of § 1982 fair-housing litigation than Fair Housing Act litigation,[31] or that they intended sterner settlement incentives in Title VII gender-discrimination cases than in Equal Pay Act gender-discrimination cases.[32]

Moreover, many statutes contain several fees-award provisions governing actions arising under different subsections, and the phraseology of these provisions sometimes differs slightly from section to section. It is simply preposterous to think that Congress or the drafters of the Rules intended to sanction differing applications of Rule 68 depending on which particular subsection of, *inter alia*, the Privacy Act of 1974,[33] the Home Owners' Loan Act of 1933,[34] the Outer Continental

---

[31] In fact, the Senate Report to § 1988 specifically addressed the interplay between the Fair Housing Act and § 1982 and emphasized Congress' intent to abolish the "anomalous gaps" between the two statutes and to make them "consistent" with respect to attorney's fee awards. S. Rep. No. 94–1011, at 4.

[32] With respect to fees-award statutes enacted prior to 1938—which the Court relies on as evidence of the drafters' and Congress' intent to sanction a chameleonic definition of "costs," *ante*, at 8–9, the same inexplicable scheme would result. For example, the FLSA, 52 Stat. 1060, 29 U. S. C. § 201 *et seq.*, and the Railway Labor Act of 1926, 44 Stat. 577, 45 U. S. C. § 151 *et seq.*, are both designed to regulate the hours and wages of covered employees. Both provide for private causes of action and for the recovery of reasonable attorney's fees. But the FLSA provides for fees *and* costs, 52 Stat. 1069, 29 U. S. C. § 216(b), whereas the Railway Labor Act provides for fees *as part of* the costs, 44 Stat. 578, 45 U. S. C. § 153. The Court can point to nothing suggesting that Congress intended for similarly situated employees to be subject to different attorney's fee standards under these statutes.

[33] Compare Privacy Act of 1974, 5 U. S. C. §§ 552a(g)(2)(B), 552a(g)(3)(B) ("reasonable attorney fees and other litigation costs") with 5 U. S. C. § 552a(g)(4) ("costs of the action together with reasonable attorney fees").

[34] Compare Home Owners' Loan Act of 1933, 48 Stat. 132, as amended, 12 U. S. C. § 1464(q)(3) ("cost of suit, including a reasonable attorney's fee")

Shelf Lands Act Amendments of 1978,[35] or the Interstate Commerce Act[36] the plaintiff happened to invoke.

In sum, there is nothing in the history and structure of the Rules or in the history of any of the underlying attorney's fee statutes to justify such incomprehensible distinctions based simply on fine linguistic variations among the underlying fees-award statutes—particularly where, as in *Roadway Express*, the cost provision can be read as embodying a *uniform* definition derived from § 1920. As partners with Congress, we have a responsibility not to carry "plain language" constructions to the point of producing "untenable distinctions and unreasonable results." *American Tobacco Co.* v. *Patterson*, 456 U. S. 63, 71 (1982). See also n. 5, *supra*. As JUSTICE REHNQUIST, joined by THE CHIEF JUSTICE and Justice Stewart, cogently reasoned in *Delta Air Lines, Inc.* v. *August*, 450 U. S., at 378 (dissenting opinion), interpreting Rule 68 to allow a "two-tier system of cost-shifting" would attribute "woode[n] and pervers[e]" motives to Congress and to the drafters of the Rules; "[n]o persuasive justification exists for subjecting these plaintiffs to differing penalties for failure to accept a Rule 68 offer and no persuasive justification can be offered as to how such a reading of Rule 68 would in any way further the intent of the Rule which is to encourage settlement" on a uniform basis.[37]

---

with *id.*, 48 Stat. 132, as amended, 12 U. S. C. § 1464(d)(8)(A) ("reasonable expenses and attorneys' fees").

[35] Compare Outer Continental Shelf Lands Act Amendments of 1978, 92 Stat. 657, 43 U. S. C. § 1349(a)(5) ("costs of litigation, including reasonable attorney and expert witness fees") with *id.*, 92 Stat. 657, 684, 43 U. S. C. §§ 1349(b)(2) ("damages . . . including reasonable attorney and expert witness fees"), 1818(c)(1)(C) ("court costs . . . and attorneys' fees").

[36] Compare Interstate Commerce Act, 49 U. S. C. § 11705(d)(3) ("attorney's fee . . . as a part of the costs") with 49 U. S. C. § 11708(c) ("reasonable attorney's fee . . . in addition to costs").

[37] The majority in *Delta Air Lines* did not reach the issue of Rule 68's application to attorney's fees. THE CHIEF JUSTICE (implicitly) and JUS-

## II

## A

Although the Court's opinion fails to discuss any of the problems reviewed above, it does devote some space to arguing that its interpretation of Rule 68 "is in no sense inconsistent with the congressional policies underlying § 1983 and § 1988." *Ante*, at 11. The Court goes so far as to assert that its interpretation fits in smoothly with § 1988 as interpreted by *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983). *Ante*, at 11.

The Court is wrong. Congress has instructed that attorney's fee entitlement under § 1988 be governed by a *reasonableness* standard.[38] Until today the Court always has recognized that this standard precludes reliance on any mechanical "bright-line" rules automatically denying a portion of fees, acknowledging that such "mathematical approach[es]" provide "little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U. S., at 435–436, n. 11. Although the starting point is always "the number of hours *reasonably* expended on the litigation," this "does not end the inquiry": a number of considerations set forth in the legislative history of § 1988 "may lead the district court to adjust the fee upward or downward." *Id.*, at 433–434 (emphasis added).[39] We also have emphasized that

---

TICE REHNQUIST (explicitly) have today repudiated their views in *Delta Air Lines*. See *ante*, at 8–9; *ante*, at 13 (REHNQUIST, J., concurring).

[38] S. Rep. No. 94–1011, at 6; H. R. Rep. No. 94–1558, at 8–9.

[39] Among the factors that Congress intended courts to consider are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length

the district court "necessarily has discretion in making this equitable judgment" because of its "superior understanding of the litigation." *Id.*, at 437. Section 1988's reasonableness standard is, in sum, "acutely sensitive to the merits of an action and to antidiscrimination policy." *Roadway Express, Inc.* v. *Piper*, 447 U. S., at 762.

Rule 68, on the other hand, is not "sensitive" at all to the merits of an action and to antidiscrimination policy. It is a mechanical *per se* provision automatically shifting "costs" incurred after an offer is rejected, and it deprives a district court of *all* discretion with respect to the matter by using "the strongest verb of its type known to the English language—'must.'" *Delta Air Lines, Inc.* v. *August, supra,* at 369. The potential for conflict between § 1988 and Rule 68 could not be more apparent.[40]

Of course, a civil rights plaintiff who *unreasonably* fails to accept a settlement offer, and who thereafter recovers less than the proffered amount in settlement, is barred under § 1988 itself from recovering fees for unproductive work performed in the wake of the rejection. This is because "the extent of a plaintiff's success is *a* crucial factor in determining the proper amount of an award of attorney's fees," 461 U. S., at 440 (emphasis added); hours that are "excessive, redundant, or otherwise unnecessary" must be excluded from that calculus, *id.*, at 434. To this extent, the results might sometimes be the same under either § 1988's reasonableness inquiry or the Court's wooden application of Rule 68. Had the

---

of the professional relationship with the client; and (12) awards in other cases." *Hensley* v. *Eckerhart,* 461 U. S., at 430, n. 3. See also H. R. Rep. No. 94–1558, at 8.

[40] It might be argued that Rule 68's offer-of-judgment provisions merely serve to define one aspect of "reasonableness" within the meaning of *Hensley* v. *Eckerhart, supra.* This argument is foreclosed by Congress' rejection of *per se* "mathematical approach[es]" that would "end the inquiry" without allowing consideration of "all the relevant factors." *Id.*, at 433, 435–436, n. 11.

Court allowed the Seventh Circuit's remand in the instant case to stand, for example, the District Court after conducting the appropriate inquiry might well have determined that much or even all of the respondent's postoffer fees were unreasonably incurred and therefore not properly awardable.

But the results under § 1988 and Rule 68 will *not* always be congruent, because § 1988 mandates the careful consideration of a broad range of other factors and accords appropriate leeway to the district court's informed discretion. Contrary to the Court's protestations, it is not at all clear that "[t]his case presents a good example" of the smooth interplay of § 1988 and Rule 68, *ante,* at 11, because there has never been an evidentiary consideration of the reasonableness or unreasonableness of the respondent's fee request. It *is* clear, however, that under the Court's interpretation of Rule 68 a plaintiff who ultimately recovers only slightly less than the proffered amount in settlement will *per se* be barred from recovering trial fees even if he otherwise "has obtained excellent results" in litigation that will have far-reaching benefit to the public interest. *Hensley* v. *Eckerhart, supra,* at 435. Today's decision necessarily will require the disallowance of some fees that otherwise would have passed muster under § 1988's reasonableness standard,[41] and there is *nothing* in § 1988's legislative history even vaguely suggesting that Congress intended such a result.[42]

---

[41] Indeed, the "plain language" of § 1988 authorizes the inclusion as "costs" only of those attorney's fees that have been determined to be "reasonable," see n. 3, *supra,* so the cost-shifting provisions of Rule 68 necessarily will come into play only with respect to reasonable attorney's fees.

[42] Given that Congress enumerated factors to consider in applying the reasonableness standard, see nn. 4, 39, *supra,* and given that the *per se* provisions of Rule 68 were nowhere mentioned in the legislative history, there is no basis to believe that Congress intended to modify the reasonableness standard in the context of settlement offers. Moreover, as we previously have noted, Congress' use of the word "costs" in § 1988 had one purpose and one purpose only: to permit an award of attorney's fees against a State notwithstanding the Eleventh Amendment. See *Hutto*

The Court argues, however, that its interpretation of Rule 68 "is neutral, favoring neither plaintiffs nor defendants." *Ante*, at 10. This contention is also plainly wrong. As the Judicial Conference Advisory Committee on the Federal Rules of Civil Procedure has noted twice in recent years, Rule 68 "is a 'one-way street,' available only to those defending against claims and not to claimants."[43] Interpreting Rule 68 in its current version to include attorney's fees will lead to a number of skewed settlement incentives that squarely conflict with Congress' intent. To discuss but one example, Rule 68 allows an offer to be made any time after the complaint is filed and gives the plaintiff only 10 days to accept or reject. The Court's decision inevitably will encourage defendants who know they have violated the law to make "low-ball" offers immediately after suit is filed and before plaintiffs have been able to obtain the information they are entitled to by way of discovery to assess the strength of their claims and the reasonableness of the offers. The result will put severe pressure on plaintiffs to settle on the basis of inadequate information in order to avoid the risk of bearing all of their fees even if reasonable discovery might reveal that the defendants were subject to far greater liability. Indeed, because Rule 68 offers may be made recurrently without limitation, defendants will be well advised to make ever-slightly larger offers throughout the discovery process and before plaintiffs have conducted all reasonably necessary discovery.

This sort of so-called "incentive" is fundamentally incompatible with Congress' goals. Congress intended for "private citizens . . . to be able to assert their civil rights" and for "those who violate the Nation's fundamental laws" not to be

---

v. *Finney*, 437 U. S. 678, 693–695 (1978); S. Rep. No. 94–1011, at 5; H. R. Rep. No. 94–1558, at 7.

[43] Advisory Committee's Note to Proposed Amendment to Rule 68, 98 F. R. D. 339, 363 (1983); Advisory Committee's Note to Proposed Amendment to Rule 68, 102 F. R. D. 407, 434 (1984).

able "to proceed with impunity."[44] Accordingly, civil rights plaintiffs "'appear before the court cloaked in a mantle of public interest'"; to promote the *vigorous* enforcement of modern civil rights legislation," Congress has directed that such "private attorneys general" shall not "be deterred from bringing good faith actions to vindicate the fundamental rights here involved."[45] Yet requiring plaintiffs to make wholly uninformed decisions on settlement offers, at the risk of *automatically* losing all of their postoffer fees no matter what the circumstances and notwithstanding the "excellent"[46] results they might achieve after the full picture emerges, will work just such a deterrent effect.[47]

Other difficulties will follow from the Court's decision. For example, if a plaintiff recovers less money than was offered before trial but obtains potentially far-reaching injunctive or declaratory relief, it is altogether unclear how the Court intends judges to go about quantifying the "value" of the plaintiff's success.[48] And the Court's decision raises

---

[44] S. Rep. No. 94–1011, at 2.

[45] H. R. Rep. No. 94–1558, at 6; S. Rep. No. 94–1011, at 4–5 (emphasis added). See generally *Northcross* v. *Memphis Board of Education*, 412 U. S. 427, 428 (1973) *(per curiam); Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 401–402 (1968) *(per curiam).*

[46] *Hensley* v. *Eckerhart*, 461 U. S., at 435.

[47] The Judicial Conference Advisory Committee on the Federal Rules has emphasized the unfairness of forcing a party to make such a decision before "enough discovery has been had to appraise the strengths and weaknesses of a claim or defense," and thus has proposed extension of Rule 68 to attorney's fees only in connection with measures to ensure that the offeree has all "information to which it would be entitled by way of discovery under the rules to appraise the fairness of the offer." Advisory Committee's Note to Proposed Amendment to Rule 68, 102 F. R. D., at 434–435.

[48] For example, a plaintiff who is unable to prove actual damages at trial and recovers only nominal damages of $1, but who nevertheless demonstrates the unconstitutionality of the challenged practice and obtains an injunction, is surely a "prevailing party" within the meaning of § 1988. If the plaintiff had earlier rejected an offer of $500 to "get rid" of the controversy, the damages portion of his suit will fall within Rule 68 as interpreted

additional problems concerning representation and conflicts of interest in the context of civil rights class actions.[49]   These are difficult policy questions, and I do not mean to suggest

by today's decision.   Yet we previously have emphasized that "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."   *Hensley* v. *Eckerhart, supra,* at 435–436, n. 11.   See also 461 U. S., at 445, n. 5 (BRENNAN, J., concurring in part and dissenting in part) ("Civil rights remedies often benefit a large number of persons, many of them not involved in the litigation, making it difficult both to evaluate what a particular lawsuit is really worth to those who stand to gain from it and to spread the costs of obtaining relief among them. . . . [The] problem is compounded by the fac[t] that monetary damages are often not an important part of the recovery sought under the statutes enumerated in § 1988").   Although courts must therefore evaluate the "value" of nonpecuniary relief before deciding whether the "judgment" was "more favorable than the offer" within the meaning of Rule 68, the uncertainty in making such assessments surely will add pressures on a plaintiff to settle his suit even if by doing so he abandons an opportunity to obtain potentially far-reaching nonmonetary relief—a discouraging incentive entirely at odds with Congress' intent. See S. Rep. No. 94–1011, at 5–6; H. R. Rep. No. 94–1558, at 8–9.

Of course, the difficulties in assessing the "value" of nonpecuniary relief are inherent in Rule 68's operation whether or not the Rule applies to attorney's fees.   But when the Rule was interpreted simply as affecting at most several hundred or several thousand dollars of traditionally taxable costs, these inherent problems were of little practical significance.   Now that Rule 68 applies in some situations to the vital question of attorney's fees, these problems will assume major significance.

[49] Like the question of injunctive relief, see n. 48, *supra,* these problems are inherent in Rule 68 but were inconsequential so long as the operation of the Rule was limited to taxable costs as defined in 28 U. S. C. § 1920. Now that the Rule has been extended to many attorney's fee provisions, these difficulties can be expected to create substantial problems in administering class actions.   "[S]uits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs." *General Telephone Co.* v. *Falcon,* 457 U. S. 147, 157 (1982).   Rule 68 makes no distinctions between individual and class actions.   Yet, as the Advisory Committee recently has cautioned, in the class-action context "[an] offeree's rejection would burden a named representative-offeree with the risk of exposure to heavy liability [for costs and expenses] that could

that stronger settlement incentives would necessarily conflict with the effective enforcement of the civil rights laws. But contrary to the Court's 4-paragraph discussion, the policy considerations do not all point in one direction, and the question of whether and to what extent attorney's fees should be included within Rule 68 has provoked sharp debate in Congress, in the Advisory Committee on the Federal Rules, and among commentators.[50] The Court has offered some inter-

---

not be recouped from unnamed class members. . . . [This] could lead to a conflict of interest between the named representatives and other members of the class." Advisory Committee's Note to Proposed Amendment to Rule 68, 102 F. R. D., at 436.

Moreover, Rule 23(e) requires the court's approval before a class action is compromised; the Rule protects class members "from unjust or unfair settlements affecting their rights by representatives who lose interest or are able to secure satisfaction of their individual claims by compromise." *Moreland* v. *Rucker Pharmacal Co.*, 63 F. R. D. 611, 615 (WD La. 1974). Yet Rule 68 does not mesh with such careful supervision. Its "plain language" requires simply that upon the plaintiff's acceptance "the clerk *shall* enter judgment."

In addition, Rule 68 sets a nondiscretionary 10-day limit on the plaintiff's power of acceptance—a virtually impossible amount of time in many cases to consider the likely merits of complex claims of relief, give notice to class members, and secure the court's approval.

[50] In addition to the sources cited in nn. 57, 59, and 61, *infra*, see, *e. g.*, Branham, Offer of Judgment and Rule 68: A Response to the Chief Justice, 18 John Marshall L. Rev. 341 (1985); Fiss, Comment, Against Settlements, 93 Yale L. J. 1073 (1984); Shavell, Suit, Settlement, and Trial: A Theoretical Analysis Under Alternative Methods for the Allocation of Legal Costs, 11 J. Legal Studies 55 (1982); Simon, Rule 68 at the Crossroads: The Relationship Between Offer of Judgment and Statutory Attorney's Fees, 53 U. Cin. L. Rev. 889 (1984); Notes, The Impact of Proposed Rule 68 on Civil Rights Litigation, 84 Colum. L. Rev. 719 (1984); Note, Rule 68: A "New" Tool for Litigation, 1978 Duke L. J. 889; Offer of Judgment and Statutorily Authorized Attorney's Fees: A Reconciliation of the Scope and Purpose of Rule 68, 16 Ga. L. Rev. 482 (1982); The 'Offer of Judgment' Rule in Employment Discrimination Actions: A Fundamental Incompatibility, 10 Golden Gate L. Rev. 963 (1980); Notes, The Proposed Amendment to Federal Rule of Civil Procedure 68: Toughening the Sanctions, 70 Iowa L. Rev. 237 (1984).

esting arguments based on an economic analysis of settlement incentives and aggregate results. *Ante*, at 10. But I believe Judge Posner had the better of this argument in concluding that the incentives created by interpreting Rule 68 in its current form to include attorney's fees would "cu[t] against the grain of section 1988," and that in any event a modification of Rule 68 to encompass fees is for Congress, not the courts. 720 F. 2d, at 479.

## B

Indeed, the judgment of the Court of Appeals below turned on its determination that an interpretation of Rule 68 to include attorney's fees is beyond the pale of the judiciary's rulemaking authority. *Ibid.* Congress has delegated its authority to this Court "to prescribe by general rules . . . the practice and procedure of the district courts and courts of appeals of the United States in civil actions." 28 U. S. C. § 2072.[51] This grant is limited, however, by the condition that "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Ibid.* The right to attorney's fees is "substantive" under any reasonable definition of that term. Section 1988 was enacted pursuant to § 5 of the Fourteenth Amendment, and the House and Senate Reports recurrently emphasized that "fee awards are an integral part of the *remedies* necessary to obtain . . . compliance" with the

---

[51] Section 2072 provides in relevant part:

"The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers.

"Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution."

civil rights laws and to redress violations.[52]   Statutory attorney's fees remedies such as that set forth in § 1988 "are far more like new causes of action tied to specific rights than like background procedural rules governing any and all litigation."   *Hensley* v. *Eckerhart*, 461 U. S., at 443, n. 2 (BRENNAN, J., concurring in part and dissenting in part).   See also 720 F. 2d, at 479 (§ 1988 "does not make the litigation process more accurate and efficient for both parties; even more clearly than the statute of limitations [at issue in *Ragan* v. *Merchants Transfer & Warehouse Co.*, 337 U. S. 530 (1949)], it is designed instead to achieve a substantive objective—compliance with the civil rights laws").[53]

As construed by the Court today, Rule 68 surely will operate to "abridge" and to "modify" this statutory right to reasonable attorney's fees.   "The test must be whether a rule really regulates *procedure*,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them," or instead operates to abridge a substantive right "in the guise of regulating procedure."   *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, 10, 14 (1941) (emphasis added); see also *Hanna* v. *Plumer*, 380 U. S. 460, 464–465 (1965). Unlike those provisions of the Federal Rules that explicitly authorize an award of attorney's fees, Rule 68 is not addressed to bad-faith or unreasonable litigation conduct.   The courts always have had inherent authority to assess fees against parties who act "in bad faith, vexatiously, wantonly,

---

[52] S. Rep. No. 94–1011, at 5 (emphasis added).   See also *id.*, at 2–4; H. R. Rep. No. 94–1558, at 1; *Maine* v. *Thiboutot*, 448 U. S. 1, 11 (1980).

[53] "The most helpful way . . . of defining a substantive rule—or more particularly a substantive right, which is what the Act refers to—is as a right granted for one or more nonprocedural reasons, for some purpose or purposes not having to do with the fairness or efficiency of the litigation process."   Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693, 725 (1974).

or for oppressive reasons," *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S., at 258–259, and the assessment of fees against parties whose *unreasonable* conduct has violated the rules of litigation falls comfortably into the courts' authority to administer "remedy and redress for disregard or infraction" of those rules, *Sibbach* v. *Wilson & Co.*, *supra*, at 14.

Rule 68, on the other hand, contains no reasonableness component. See *supra*, at 29. As interpreted by the Court, it will operate to divest a prevailing plaintiff of fees to which he otherwise might be entitled under the reasonableness standard simply because he guessed wrong, or because he did not have all information reasonably necessary to evaluate the offer, or because of unforeseen changes in the law or evidence after the offer. The Court's interpretation of Rule 68 therefore clearly collides with the congressionally prescribed substantive standards of § 1988, and the Rules Enabling Act requires that the Court's interpretation give way.

If it had addressed this central issue, perhaps the Court would have reasoned that Rule 68 as interpreted to include attorney's fees is merely a procedural device designed to further the important policy of encouraging efficient and prompt resolution of disputes. With all respect, such refashioning of settlement incentives is squarely foreclosed by the Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society*, which held that it is "inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation." 421 U. S., at 247. Beyond a handful of "limited circumstances" that do not encompass today's decision,[54] "it is

---

[54] Those exceptions include recovery of attorney's fees from a common fund, and recovery of attorney's fees where the opposing party has acted in bad faith or in willful disobedience of a court order. See, *e. g.*, *Summit Valley Industries, Inc.* v. *Carpenters*, 456 U. S. 717, 721 (1982); *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 257–259 (1975).

apparent that the circumstances under which attorney's fees are to be awarded *and the range of discretion of the courts in making these awards* are matters for Congress to determine," *id.*, at 257, 262 (emphasis added), and that "courts are not free to fashion drastic new rules with respect to the allowance" or disallowance of attorney's fees, *id.*, at 269. By permitting a mechanical *per se* rule to supplant the congressionally prescribed reasonableness standard of § 1988, and by divesting courts of the discretion Congress intended them to exercise, the Court has assumed a forbidden "roving authority" to "make major inroads on a policy matter that Congress has reserved for itself." *Id.*, at 260, 269. It matters not whether such "roving authority" is exercised on a case-by-case basis or, as here, in interpreting a Federal Rule promulgated pursuant to Congress' delegation of rulemaking authority: in either event, the result is to "abridge" and to "modify" the substance of § 1988 "in the guise of regulating procedure." *Sibbach* v. *Wilson & Co., supra,* at 10.[55]

### III

For several years now both the Judicial Conference and Congress have been engaged in an extensive reexamination of Rule 68 and have considered numerous proposals to amend the Rule to include attorney's fees. The Advisory Committee on the Federal Rules initially proposed an amendment to Rule 68 in August 1983 that would have applied equally to plaintiffs and defendants and that would have left application of the Rule's fee provisions in the courts' informed discre-

---

[55] "It would be untenable to assert that Congress, although determined to prevent the courts through judicial interpretation from 'mak[ing] major inroads on a policy matter that Congress has reserved for itself,' would approve of the identical result if achieved through judicial rulemaking." Note, The Conflict Between Rule 68 and the Civil Rights Attorneys' Fee Statute: Reinterpreting the Rules Enabling Act, 98 Harv. L. Rev. 828, 844 (1985), quoting *Alyeska Pipeline Service Co.* v. *Wilderness Society, supra,* at 269.

tion.[56]   The proposal received extensive criticism[57] and subsequently was replaced with a revised version in September 1984.   The attorney's fee provisions of that proposal would

---

[56] The proposed Rule provided:

"At any time more than 30 days before the trial begins, any party may serve upon an adverse party an offer, denominated as an offer under this rule, to settle a claim for the money or property or to the effect specified in his offer and to enter into a stipulation dismissing the claim or to allow judgment to be entered accordingly.   The offer shall remain open for 30 days unless a court authorizes earlier withdrawal.   An offer not accepted in writing within 30 days shall be deemed withdrawn.   Evidence of an offer is not admissible except in a proceeding to enforce a settlement or to determine costs and expenses.

"If the judgment finally entered is not more favorable to the offeree than an unaccepted offer that remained open 30 days, the offeree must pay the costs and expenses, including reasonable attorneys' fees, incurred by the offeror after the making of the offer, and interest from the date of the offer on any amount of money that a claimant offered to accept to the extent such interest is not otherwise included in the judgment.   The amount of the expenses and interest may be reduced to the extent expressly found by the court, with a statement of reasons, to be excessive or unjustified under all of the circumstances.   In determining whether a final judgment is more or less favorable to the offeree than the offer, the costs and expenses of the parties shall be excluded from consideration.   Costs, expenses, and interest shall not be awarded to an offeror found by the court to have made an offer in bad faith.

"The fact that an offer is made but not accepted does not preclude a subsequent offer.   When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of·the liability remains to be determined by further proceedings, any party may make an offer of settlement under this rule, which shall be effective for such period of time, not more than 30 days, as is authorized by the court. This rule shall not apply to class or derivative actions under Rules 23, 23.1, and 23.2."   Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendment to the Federal Rules of Civil Procedure (Aug. 1983), reprinted in 98 F. R. D. 337, 361–363 (1983).

[57] See generally Proposed Amendments to the Federal Rules of Civil Procedure: Hearings before the Advisory Committee on Civil Rules of the Judicial Conference of the United States (Washington, D. C., Jan. 18, 1984); Proposed Amendments to the Federal Rules of Civil Procedure:

apply only if a court determined that "an offer was rejected unreasonably," and the proposal sets forth detailed factors for assessing the reasonableness of the rejection.[58]   Public

Hearings before the Advisory Committee of Federal Rules of Civil Procedure of the United States Judicial Conference (Los Angeles, Cal., Feb. 3, 1984).

[58] The revised proposed Rule 68 provides:

"At any time more than 60 days after the service of the summons and complaint on a party but not less than 90 days (or 75 days if it is a counter-offer) before trial, either party may serve upon the other party but shall not file with the court a written offer, denominated as a[n] offer under this rule, to settle a claim for the money, property, or relief specified in the offer and to enter into a stipulation dismissing the claim or to allow judgment to be entered accordingly.   The offer shall remain open for 60 days unless sooner withdrawn by a writing served on the offeree prior to acceptance by the offeree.   An offer that remains open may be accepted or rejected in writing by the offeree.   An offer that is neither withdrawn nor accepted within 60 days shall be deemed rejected.   The fact that an offer is made but not accepted does not preclude a subsequent offer.   Evidence of an offer is not admissible except in proceedings to enforce a settlement or to determine sanctions under this rule.

"If, upon a motion by the offeror within 10 days after the entry of judgment, the court determines that an offer was rejected unreasonably, resulting in unnecessary delay and needless increase in the cost of the litigation, it may impose an appropriate sanction upon the offeree.   In making this determination the court shall consider all of the relevant circumstances at the time of the rejection, including (1) the then apparent merit or lack of merit in the claim that was the subject of the offer, (2) the closeness of the questions of fact and law at issue, (3) whether the offeror had unreasonably refused to furnish information necessary to evaluate the reasonableness of the offer, (4) whether the suit was in the nature of a "test case," presenting questions of far-reaching importance affecting non-parties, (5) the relief that might reasonably have been expected if the claimant should prevail, and (6) the amount of the additional delay, cost, and expense that the offeror reasonably would be expected to incur if the litigation should be prolonged.

"In determining the amount of any sanction to be imposed under this rule the court also shall take into account (1) the extent of the delay, (2) the amount of the parties' costs and expenses, including any reasonable attorney's fees incurred by the offeror as a result of the offeree's rejection, (3) the interest that could have been earned at prevailing rates on the amount

hearings on this proposed amendment were held only several months ago.[59]

In the meantime, numerous revisions of § 1988 have been proposed in Congress in recent years. A 1981 proposal would have imposed a rule similar to that adopted by the Court today,[60] but it drew sharp opposition during legislative hearings[61] and never was voted out of Subcommittee. Subsequent proposals to the same effect have had a similar fate.[62] In 1984, legislation was introduced that would have adopted the same rule but subject to the qualification that the failure to accept a settlement offer "was not reasonable at the time

---

that a claimant offered to accept to the extent that the interest is not otherwise included in the judgment, and (4) the burden of the sanction on the offeree.

"This rule shall not apply to class or derivative actions under Rules 23, 23.1, and 23.2." Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure (Sept. 1984), reprinted in 102 F. R. D. 407, 432–433 (1985).

[59] See generally Proposed Amendments to the Federal Rules of Civil Procedure: Hearings before the Standing Committee on Rules of Practice and Procedure and the Advisory Committees on Civil and Criminal Rules of the Judicial Conference of the United States (Washington, D. C., Feb. 1, 1985); Proposed Amendments to the Federal Rules of Civil Procedure: Hearings before the Standing Committee on Rules of Practice and Procedure and the Advisory Committees on Civil and Criminal Rules of the Judicial Conference of the United States (San Francisco, Cal., Feb. 21, 1985).

[60] During Subcommittee hearings, Senator Hatch submitted a proposed amendment to S. 585, 97th Cong., 1st Sess. (1981), § 2(c) of which would have provided: "No fee shall be awarded under [§ 1988] as compensation for that part of litigation subsequent to a declined offer of settlement when such offer was as substantially favorable to the prevailing party as the relief ultimately awarded by the court." Attorney's Fees Awards: Hearings on S. 585 before the Subcommittee on the Constitution of the Senate Committee on the Judiciary, 97th Cong., 2d Sess., 13 (1982).

[61] See *id.*, at 17–18, 29–31, 51, 65–66, 72. See also Municipal Liability Under 42 U. S. C. § 1983: Hearings on S. 585, *supra.*

[62] See, *e. g.*, S. 141, 98th Cong., 1st Sess. (1983); H. R. 721, 99th Cong., 1st Sess. (1985).

such failure occurred."[63]   Hearings were held on this legislation,[64] but it too never was voted out of Subcommittee.

This activity is relevant in two respects.   First, it rather strongly suggests that neither the Advisory Committee nor Congress has viewed Rule 68 as currently governing attorney's fees, else the proposals to amend Rule 68 to include attorney's fees would largely be unnecessary.   Second, the Committee and Congress have given close consideration to a broad range of troubling issues that would be raised by application of Rule 68 to attorney's fees, such as (1) whether to import a reasonableness standard into Rule 68, (2) whether and to what extent district courts should have discretion in applying the Rule, (3) the need to revise Rule 68 so as to ensure that offerees have had sufficient time and discovery to evaluate the strength of their cases and the reasonableness of settlement offers, (4) application of the Rule to suits for nonpecuniary relief, (5) application of the Rule to class-action litigation, (6) conflicts of interest between attorneys and clients that the Rule might create, and (7) the precise nature and scope of the sanction.   Many of the proposals discussed above have been carefully crafted to address these problems. See nn. 56, 58, and 63, *supra.*

Congress and the Judicial Conference are far more institutionally competent than the Court to resolve this matter.

---

[63] S. 2802, § 8(2), 98th Cong., 2d Sess. (1984):

"No award of attorney's fees and related expenses subject to the provisions of this Act may be made—

.                 .                 .                 .

"(2) for services performed subsequent to the time a written offer of settlement is made to a party, if the offer is not accepted and a court or administrative officer finds that—

"(A) the relief finally obtained by the party is not more favorable to the party than the offer of settlement, and

"(B) the failure of the party to accept the offer of settlement was not reasonable at the time such failure occurred."

[64] See Legal Fees Equity Act: Hearings on S. 2802 before the Subcommittee on the Constitution of the Senate Committee on the Judiciary, 98th Cong., 2d Sess. (1984).

Because the issue before us at the very least is ambiguous, and because the "plain language" approach leads to so many inexplicable inconsistencies in the operation of the Rules and the substantive fees-award statutes, the Court should have stayed its hand and allowed these other avenues for amending Rule 68 to be pursued. Under these circumstances, the Court's decision to the contrary constitutes poor judicial administration as well as poor law, and it renders even more imperative the need for Congress and the Judicial Conference to resolve this problem with dispatch.

### APPENDIX TO OPINION OF BRENNAN, J., DISSENTING

Congress has enacted well over 100 fee-shifting statutes, which typically fall into three broad categories:

(A) *Statutes that refer to attorney's fees "as part of the costs."* Variations include "attorney's fees to be taxed and collected as part of the costs," "costs including attorney's fees," and "attorney's fees and other litigation costs." Under the Court's "plain language" approach, these various formulations all "defin[e] 'costs' to include attorney's fees." *Ante*, at 9. Thus where an action otherwise is governed by Rule 68, attorney's fees that are potentially awardable under these statutes "are to be included as costs for purposes of Rule 68." *Ibid.*

(B) *Statutes that do not refer to attorney's fees as part of the costs.* Many other fee statutes do not describe fees "as" costs, but instead as an item separate from costs. Typical formulations include "costs and a reasonable attorney's fee," "costs together with a reasonable attorney's fee," and "costs, expenses, and a reasonable attorney's fee." Some statutes simply authorize awards of fees without any reference to costs. Under the Court's "plain language" approach, none of these formulations "defin[e] 'costs' to include attorney's fees." *Ibid.* Thus where an action otherwise is governed by Rule 68, attorney's fees that are potentially awardable under these statutes are *not* subject to Rule 68 and instead

are to be evaluated solely under the reasonableness standard as summarized in *Hensley* v. *Eckerhart,* 461 U. S. 424 (1983).

(C) *Statutes that may or may not refer to attorney's fees as part of the costs.* A number of statutes authorize the award of "costs and expenses, including attorney's fees." It is altogether uncertain how such statutes should be categorized under the Court's "plain language" approach to Rule 68. On the one hand, if the phrase "including attorney's fees" is read as modifying the word "costs" at least in part, attorney's fees that are potentially awardable under these statutes arguably are subject to Rule 68. On the other hand, if "including attorney's fees" is read as modifying only the word "expenses" (which seems to be the more plausible "plain meaning"), fees under these statutes are *not* subject to Rule 68 and instead are governed solely by the reasonableness standard as summarized in *Hensley* v. *Eckerhart, supra.*

The following is a summary of the statutes enacted by Congress authorizing courts to award attorney's fees, broken down into the three categories discussed above.[65] The Court has not explained why it is that either Congress or the drafters of the Federal Rules might have intended to create such disparate settlement incentives based on minor variations in the phraseology of attorney's fee statutes.

### A. *Attorney's Fees Referred to as "Costs"*

1. Freedom of Information Act, 5 U. S. C. §§ 552(a)(4)(E) and (F).
2. Privacy Act of 1974, 5 U. S. C. §§ 552a(g)(2)(B), 552a(g)(4)(B).
3. Government in the Sunshine Act, 5 U. S. C. § 552b(i).

---

[65] This list does not purport to be a complete enumeration of all statutes authorizing court-awarded attorney's fees. Moreover, I do not suggest that all of these statutes necessarily are governed by Rule 68's offer-of-judgment provisions.

4. Commodity Exchange Act, 88 Stat. 1394, as amended, 7 U. S. C. §§ 18(d) and (e).
5. Packers and Stockyard Act of 1921, 42 Stat. 166, as amended, 7 U. S. C. § 210(f).
6. Perishable Agricultural Commodities Act of 1930, 46 Stat. 534, as amended, 7 U. S. C. § 499g(b).
7. Agricultural Fair Practices Act of 1967, 82 Stat. 95, 7 U. S. C. §§ 2305(a) and (c).
8. Home Owners' Loan Act of 1933, 48 Stat. 132, as amended, 12 U. S. C. § 1464(q)(3).
9. Bank Holding Company Act Amendments of 1970, 84 Stat. 1767, 12 U. S. C. § 1975.
10. Clayton Antitrust Act, 38 Stat. 731, as amended, 15 U. S. C. §§ 15(a) and (b).
11. Hart-Scott-Rodino Antitrust Improvements Act of 1976, 90 Stat. 1394, 1396, as amended, 15 U. S. C. §§ 15c(a)(2), 26.
12. Unfair Competition Act of 1916, 39 Stat. 798, 15 U. S. C. § 72.
13. Securities Act of 1933, 48 Stat. 82, as amended, 15 U. S. C. § 77k(e).
14. Trust Indenture Act of 1939, 53 Stat. 1171, 1176, 15 U. S. C. §§ 77ooo(e), 77www(a).
15. Securities Exchange Act of 1934, 48 Stat. 890, 898, as amended, 15 U. S. C. §§ 78i(e), 78r(a).
16. Jewelers Hall-Mark Act, 34 Stat. 262, as amended, 15 U. S. C. §§ 298(b)–(d).
17. Consumer Product Safety Act, 86 Stat. 1218, 1226, as amended, 15 U. S. C. §§ 2060(c) and (f), 2072(a), 2073.
18. Hobby Protection Act, 87 Stat. 686, 15 U. S. C. § 2102.
19. Export Trading Company Act of 1982, 96 Stat. 1243, 15 U. S. C. §§ 4016(b)(1) and (4).
20. National Cooperative Research Act of 1984, 98 Stat. 1817, 15 U. S. C. §§ 4304(a) and (b) (1982 ed., Supp. III).
21. National Historic Preservation Act Amendments of 1980, 94 Stat. 3002, 16 U. S. C. § 470w–4.

22. Endangered Species Act of 1973, 87 Stat. 897, as amended, 16 U. S. C. § 1540(g)(4).
23. Public Utility Regulatory Policies Act of 1978, 92 Stat. 3129, 16 U. S. C. §§ 2632(a) and (b).
24. Copyright Act of 1976, 90 Stat. 2586, 17 U. S. C. § 505.
25. Semiconductor Chip Protection Act of 1984, 98 Stat. 3353, 17 U. S. C. § 911(f) (1982 ed., Supp. III).
26. Racketeer Influenced and Corrupt Organizations Act, 18 U. S. C. § 1964(c).
27. Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. § 2520.
28. Jury System Improvement Act of 1978, 28 U. S. C. § 1875(d)(2).
29. Rehabilitation Act of 1973, 92 Stat. 2982, 29 U. S. C. § 794a(b).
30. Surface Mining Control and Reclamation Act of 1977, 91 Stat. 503, 30 U. S. C. § 1270(d).
31. Deep Seabed Hard Mineral Resources Act, 94 Stat. 573, 30 U. S. C. § 1427(c).
32. Federal Oil and Gas Royalty Management Act of 1982, 96 Stat. 2458, 30 U. S. C. § 1734(a)(4).
33. Federal Water Pollution Control Act, 86 Stat. 888, 33 U. S. C. § 1365(d).
34. Marine Protection, Research, and Sanctuaries Act of 1972, 86 Stat. 1057, 33 U. S. C. § 1415(g)(4).
35. Deepwater Ports Act of 1974, 88 Stat. 2141, 33 U. S. C. § 1515(d).
36. Act to Prevent Pollution from Ships, 94 Stat. 2302, 33 U. S. C. § 1910(d).
37. Safe Drinking Water Act, 88 Stat. 1690–1691, as amended, 42 U. S. C. §§ 300j–8(d), 300j–9(2)(B)(i) and (ii).
38. Voting Rights Act of 1965, 79 Stat. 445, as amended, 42 U. S. C. § 1973l(e).
39. The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988.

40. Civil Rights of Institutionalized Persons Act, 94 Stat. 350–351, 42 U. S. C. §§ 1997a(b), 1997c(d).

41. Title II of the Civil Rights Act of 1964, 78 Stat. 244, 42 U. S. C. § 2000a–3(b).

42. Title III of the Civil Rights Act of 1964, 78 Stat. 246, 42 U. S. C. § 2000b–1.

43. Title VII of the Civil Rights Act of 1964, 78 Stat. 261, 42 U. S. C. § 2000e–5(k).

44. Privacy Protection Act of 1980, 94 Stat. 1880, 42 U. S. C. § 2000aa–6(f).

45. Noise Control Act of 1972, 86 Stat. 1244, 42 U. S. C. § 4911(d).

46. Comprehensive Older Americans Act Amendments of 1978, 92 Stat. 1555, 42 U. S. C. § 6104(e)(1).

47. Energy Policy and Conservation Act, 89 Stat. 930, 42 U. S. C. § 6305(d).

48. Resource Conservation and Recovery Act of 1976, 90 Stat. 2826, 42 U. S. C. § 6972(e).

49. Clean Air Act, 84 Stat. 1686, 1706–1707, 42 U. S. C. §§ 7413(b), 7604(d), 7607(f).

50. Clean Air Act Amendments of 1977, 91 Stat. 784, 42 U. S. C. § 7622(e)(2).

51. Powerplant and Industrial Fuel Use Act of 1978, 92 Stat. 3335, 42 U. S. C. § 8435(d).

52. Ocean Thermal Energy Conversion Act of 1980, 94 Stat. 990, 42 U. S. C. § 9124(d).

53. Outer Continental Shelf Lands Act Amendments of 1978, 92 Stat. 657, 43 U. S. C. § 1349(a)(5).

54. Railway Labor Act of 1926, 44 Stat. 578, as amended, 45 U. S. C. § 153(p).

55. Shipping Act of 1916, 39 Stat. 737, as amended, 46 U. S. C. § 829.

56. Merchant Marine Act of 1936, 49 Stat. 2015, as amended, 46 U. S. C. § 1227.

57. Shipping Act of 1984, 98 Stat. 3132, 46 U. S. C. App. § 1710(h)(2) (1982 ed., Supp. III).

58. Communications Act of 1934, 48 Stat. 1072, 1095, 47 U. S. C. §§ 206, 407.
59. Cable Communications Policy Act of 1984, 98 Stat. 2779, 47 U. S. C. §§ 553(c)(2), 605(d)(3)(B) (1982 ed., Supp. III).
60. Natural Gas Pipeline Safety Act, 90 Stat. 2076, as amended, 49 U. S. C. App. § 1686(e).
61. Hazardous Liquid Pipeline Safety Act of 1979, 93 Stat. 1015, 49 U. S. C. App. § 2014(e).
62. Interstate Commerce Act, 49 U. S. C. §§ 11705(d)(3), § 11710(b).
63. Foreign Intelligence Surveillance Act of 1978, 92 Stat. 1796, 50 U. S. C. § 1810(c).

B. *Attorney's Fees Not Referred to as "Costs"*

1. Privacy Act of 1974, 5 U. S. C. § 552a(g)(4)B.
2. Plant Variety Act, 84 Stat. 1556, 7 U. S. C. § 2565.
3. Bankruptcy Act of 1978, as amended, 11 U. S. C. §§ 303(i), 362(h), 363(n), 523(d).
4. Home Owners' Loan Act of 1933, 48 Stat. 132, as amended, 12 U. S. C. § 1464(d)(8)(A).
5. National Housing Act, 48 Stat. 1260, as amended, 12 U. S. C. § 1730(m)(3).
6. Federal Credit Union Act, 84 Stat. 1010, as amended, 12 U. S. C. § 1786(p).
7. Federal Deposit Insurance Act, 64 Stat. 879, as amended, 12 U. S. C. § 1818(n).
8. Real Estate Settlement Procedures Act of 1974, 88 Stat. 1728, as amended, 12 U. S. C. § 2607(d)(2)(b).
9. Right to Financial Privacy Act of 1978, 92 Stat. 3708, 3789, 12 U. S. C. §§ 3417(a)(4), 3418.
10. Securities Exchange Act of 1934, 48 Stat. 899, as amended, 15 U. S. C. § 78u(h)(8).
11. Trademark Act, 60 Stat. 439, as amended, 15 U. S. C. § 1117.

12. National Traffic and Motor Vehicle Safety Act of 1966, 80 Stat. 724, 15 U. S. C. § 1400(b).
13. Truth-in-Lending Act, 82 Stat. 157, as amended, 15 U. S. C. § 1640(a).
14. Consumer Leasing Act, 90 Stat. 259, 15 U. S. C. § 1667b(a).
15. Consumer Credit Protection Act, 84 Stat. 1134, 15 U. S. C. §§ 1681n(3), 1681o(2).
16. Consumer Credit Protection Act, 88 Stat. 1524, 15 U. S. C. § 1691e(d).
17. Consumer Credit Protection Act, 91 Stat. 881, 15 U. S. C. § 1692k(a).
18. Electronic Fund Transfer Act, 92 Stat. 3737, 15 U. S. C. §§ 1693m(a) and (f).
19. Interstate Land Sales Full Disclosure Act, 82 Stat. 595, as amended, 15 U. S. C. § 1709(c).
20. Motor Vehicle Information and Cost Savings Act, 86 Stat. 955, 963, as amended, 15 U. S. C. §§ 1918(a), 1989(a)(2).
21. Toxic Substances Control Act, 90 Stat. 2039, 2041–2042, 15 U. S. C. §§ 2618(d), 2619(c)(2), 2020(b)(4)(C).
22. Petroleum Marketing Practices Act, 92 Stat. 331, 15 U. S. C. §§ 2805(d)(1) and (3).
23. Condominium and Cooperative Abuse Relief Act of 1980, 94 Stat. 1677, 1679, 15 U. S. C. §§ 3608(d), 3611(d).
24. Alaska National Interest Lands Conservation Act, 94 Stat. 2426, 16 U. S. C. § 3117(a).
25. Navajo and Hopi Indian Relocation Amendments Act of 1980, 94 Stat. 934, 25 U. S. C. § 640d–27(b).
26. Tax Reform Act of 1976, 90 Stat. 1665, 26 U. S. C. § 6110(i)(2).
27. Judicial Code, 28 U. S. C. § 1927.
28. Equal Access to Justice Act, 28 U. S. C. § 2412(b).
29. Norris-LaGuardia Act, 47 Stat. 71, 29 U. S. C. § 107.

30. Fair Labor Standards Act of 1938, 52 Stat. 1069, as amended, 29 U. S. C. § 216(b).

31. Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 524, 29 U. S. C. § 431(c).

32. Age Discrimination in Employment Act of 1967, 81 Stat. 604, as amended, 29 U. S. C. § 626(b).

33. Employee Retirement Income Security Act of 1974, 88 Stat. 891, as amended, 29 U. S. C. § 1132(g).

34. Multiple Mineral Development Act, 68 Stat. 710, 30 U. S. C. § 526(e).

35. State and Local Fiscal Assistance Act of 1972, 86 Stat. 919, as amended, 31 U. S. C. § 6721(c).

36. Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1438, as amended, 33 U. S. C. § 928(a).

37. Patent Infringement Act, 66 Stat. 813, 35 U. S. C. § 285.

38. Servicemen's Group Life Insurance Act, 72 Stat. 1165, 38 U. S. C. § 784(g).

39. Social Security Act, 49 Stat. 624, as amended, 42 U. S. C. § 406(b).

40. Atomic Energy Act of 1954, 68 Stat. 946, 42 U. S. C. § 2184.

41. Legal Services Corporation Act, 88 Stat. 381, as amended, 42 U. S. C. § 2996e(f).

42. Fair Housing Act of 1968, 82 Stat. 88, 42 U. S. C. § 3612(c).

43. Mobile Home Construction and Safety Standards Act, 88 Stat. 706, as amended, 42 U. S. C. § 5412(b).

44. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 94 Stat. 2792, 42 U. S. C. § 9612(c)(3).

45. Outer Continental Shelf Lands Act Amendments of 1978, 92 Stat. 658, 682, 43 U. S. C. §§ 1349(b)(2), 1818(c)(1)(C).

46. Alaska National Interest Lands Conservation Act, 94 Stat. 2430, 43 U. S. C. § 1631(c).

47. Act of Mar. 2, 1897, 29 Stat. 619, 48 U. S. C. § 1506.
48. Interstate Commerce Act, 49 U. S. C. § 11708(c).
49. Household Goods Transportation Act of 1980, 94 Stat. 2016, as amended, 49 U. S. C. §§ 11711(d) and (e).

C. *"Costs and Expenses, Including Attorney's Fees"*

1. Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 88 Stat. 2189, 15 U. S. C. § 2310(d)(2).
2. Multiemployer Pension Plan Amendments Act of 1980, 94 Stat. 1263, 29 U. S. C. § 1451(e).
3. Federal Mine Safety and Health Act of 1977, 91 Stat. 1303, 92 Stat. 183, 30 U. S. C. §§ 815(c)(3), 938(c).
4. Surface Mining Control and Reclamation Act of 1977, 91 Stat. 511, 520, 30 U. S. C. §§ 1275(e), 1293(c).
5. Uniform Relocation Assistance and Real Property Acquisition Policies Act, 84 Stat. 1906, 42 U. S. C. §§ 4654(a) and (c).
6. Nuclear Regulatory Commission Appropriations Authorization of 1978, 92 Stat. 2953, 42 U. S. C. § 5851(e)(2).
7. Railroad Revitalization and Regulatory Reform Act of 1976, 90 Stat. 122, as amended, 45 U. S. C. § 854(g).