830 F.2d 1547
 Jewell NEPHEW, Rafus Perkins, Elaine Neloms, and Charles
Fulton, individually and on behalf of all persons
similarly situated, Plaintiffs-Appellees,
v.
The CITY OF AURORA, By and Through ITS MAYOR AND CITY
COUNCIL; Stan Thomison and Kenneth L. Peterson,
Defendants-Appellants.
 No. 83-2053.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 19, 1987.
 
 Marcia G. O'Brien (Patrick E. Kowaleski, Charles H. Richardson and Kathleen M. Schoen also, on the briefs), Aurora, Colo., for defendants-appellants.
 Penfield W. Tate, II, Denver, Colo., for plaintiffs-appellees.
 Before HOLLOWAY, Chief Judge, and BARRETT, McKAY, LOGAN, SEYMOUR, ANDERSON, TACHA and BALDOCK, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 We consider, en banc, the issue of an appropriate measure of attorney's fees under 42 U.S.C. Sec. 1988 when the sole recovery to the prevailing party in the underlying action is an award of nominal damages.
 
 
 2
 Plaintiffs, Jewell Nephew, Rafus Perkins, Elaine Neloms and Charles Fulton, filed suit against two Aurora police officers and the City of Aurora for infringing upon their constitutional rights in violation of 42 U.S.C. Secs. 1981, 1983, 1985 (1982). Plaintiffs alleged they had been assaulted, battered and subjected to false arrest by the police officers pursuant to discriminatory policies against blacks sanctioned by the Mayor, City Council and City of Aurora. Plaintiffs sought compensatory damages, punitive damages and injunctive relief. The district court directed a verdict in favor of the Mayor and City Council at the end of plaintiffs' case. The jury subsequently found in favor of the police officers with respect to two plaintiffs but found the constitutional rights of the remaining plaintiffs had been violated. The jury awarded each of the prevailing plaintiffs nominal damages of $1.
 
 
 3
 Plaintiffs then moved for attorneys' fees under 42 U.S.C. Sec. 1988 (1982).[1] The district court reduced the number of hours requested by a portion of time spent on a related state case[2] and because only two of the four parties prevailed. The court awarded $12,500 in fees to plaintiffs for 100 hours work at a rate of $125 per hour. On appeal, a divided court held that when a plaintiff seeks substantial damages but is awarded only nominal damages, the award must be discounted to compensate for plaintiffs' very limited success. Nephew v. City of Aurora, 766 F.2d 1464, 1467 (10th Cir.1985). Upon petition for rehearing, we decided to reconsider the issue en banc in light of the recent Supreme Court decision in City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).
 
 I.
 
 4
 Section 1988 was created by the Civil Rights Attorney's Awards Act of 1976, Pub.L. No. 94-559, 1976 U.S.Code Cong. & Admin.News p. 5908 (90 Stat.) 2641. The legislative history behind the bill refers to the appropriate standard for determining fees as the twelve-factor test set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974).[3] See H.R.Rep. No. 1558, 94th Cong.2d Sess. 8; S.R. No. 1011, 94th Cong.2d Sess. 4, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5913. The Senate Report also states that attorneys' fees should not be reduced because the rights involved may be nonpecuniary in nature. That accords with comments in Johnson that consideration of the amount of damages awarded should not "obviate court scrutiny of the decision's effect on the law." 488 F.2d at 718.
 
 
 5
 The Supreme Court's first opinion in the area, Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), considered whether "a partially prevailing plaintiff [could] recover an attorney's fee for legal services on an unsuccessful claim." Id. at 426, 103 S.Ct. at 1936. The lodestar incorporates many of the Johnson factors and is considered the reasonable fee required by section 1988. Once determined, however, the figure can be adjusted upward or downward, according to certain factors, one of the most important of which is the "results obtained." Id. at 434, 103 S.Ct. at 1940. In Hensley the Court remanded the case because the district court had not properly considered the results obtained. Although the Supreme Court held that the extent of a plaintiff's success is a crucial factor in determining attorneys' fees, the court did not bar the award of fees for unsuccessful claims. Instead it cautioned that "the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id. at 440, 103 S.Ct. at 1943.
 
 
 6
 In Rivera, the Court affirmed the application of the lodestar to a civil rights action in which a plaintiff recovers only monetary damages. Plaintiffs initially sued the City of Riverside, its police chief and thirty police officers on several state claims and alleged violations of their constitutional rights. Plaintiffs sought compensatory and punitive damages and injunctive relief. The court dismissed suits against seventeen of the officers on motion. The jury found in favor of plaintiffs and against the City and five of the officers. It awarded plaintiffs $33,350 in compensatory and punitive damages. The district court awarded attorneys' fees of $245,456,25 to plaintiff: 1,946.75 hours at $125 per hour and 84.5 hours at $25 per hour for law clerks. The Supreme Court remanded the trial court's initial award for reconsideration in light of Hensley. The district court arrived at the same conclusion and was affirmed on appeal. Defendants appealed again to the Supreme Court.
 
 
 7
 A five-member majority affirmed the trial court's fee award, but the majority was divided in its analysis. Justice Brennan, writing for the plurality, initially focused on Hensley's characterization of the nature of "results obtained," "[w]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Rivera, 106 S.Ct. at 2692 (quoting Hensley, 461 U.S. at 435, 103 S.Ct. at 1940). Extending the Hensley analysis to Rivera, the opinion explicitly rejected defendant's contention that the lodestar approach was inappropriate to a civil rights action in which monetary damages are the only recovery. Id. 106 S.Ct. at 2694. The opinion also rejected a requirement that attorneys' fees be conditioned on, or proportionate to, a monetary damages award. Id. at 2694, 2698. Although it noted that the amount of damages is relevant to the fee awarded, the opinion distinguished a civil rights action from private tort litigation because the civil rights plaintiff also vindicates "important civil and constitutional rights that cannot be valued in monetary terms." Id. at 2694. That vindication often can include important social benefits that are not reflected in nominal damages. Thus, a proportionality rule would focus the fee evaluation on only one result obtained. It would also undermine the legislative intent underlying the Act: providing adequate compensation to attorneys to encourage them to accept civil rights cases in which monetary recovery might be limited.
 
 
 8
 Justice Powell, concurring, did not interpret Hensley's analysis as broadly as did the plurality. Nevertheless, he also did not reject the lodestar approach when plaintiff's only recovery is monetary damages. Instead, he implicitly used the lodestar when he wrote: "the most critical factor [in the final determination of fee awards] is the degree of success obtained." Id. at 2700 (Powell, J., concurring) (quoting Hensley, 461 U.S. at 436, 103 S.Ct. at 1941) (emphasis added). In considering the degree of success obtained, the concurrence recognizes that the court may weigh the vindication of constitutional rights in addition to the award of monetary damages. Justice Powell notes that the award of private damages will rarely be said to benefit the public interest to an extent justifying such disproportionality as existed between the damages and fees in Rivera. Id. 106 S.Ct. at 2700 n. 3. Nevertheless, he also states that neither history nor court decisions support a "rule" of proportionality. Id. at 2700. Thus, he seems to interpret Hensley to allow widely disproportionate fees in fewer cases than would the plurality. The concurrence requires particularly careful consideration of the amount of damages awarded in assessing fees but still allows a court discretion to award fees greater than the damages in those cases in which the vindication of constitutional rights is an important element of success. Justice Powell was able to affirm the district court's decision in Rivera because the district court's findings of fact clearly explained the factors underlying its fee award, including the close relationship of the claims, counsel's skill in handling the case, the difficulty in pursuing the action, the excellent results achieved for plaintiffs and, in particular, the benefit to the public in the vindication of plaintiff's constitutional rights. Id. at 2699.
 
 
 9
 Therefore, following Rivera, we cannot assume the trial court erred despite the great disproportionality between the fee awarded and the damages recovered in the present case. Discretion to award fees lies ultimately with the district court. Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. We must determine whether the court's findings of fact are clearly erroneous and, in light of those findings, whether the trial court abused its discretion in awarding the fee.
 
 II.
 
 10
 The plaintiffs, who were awarded judgment, were clearly prevailing parties. Their fee request was for 180.5 hours at $125 per hour. The time records themselves were not disputed, only the compensation for services. Record, vol. 2, at 2-3. The district court began its evaluation of fees with the lodestar. In determining the reasonable amount of hours for litigation, the court discussed the difficulty for both counsel and the parties in bringing a civil rights action because of the delicate nature of relations among counsel, citizens, and the city and its representatives. The court also noted the extensive preparation required for a 1983 case and the difficulty in articulating a claim for relief. Id. at 5-6. Further, the court noted the ability of plaintiffs' counsel in civil rights litigation. Despite its consideration of those factors supporting counsel's work, the district court reduced the number of hours requested. It specifically stated the basis for that reduction: (1) certain aspects of a related state claim were separable from the federal suit, and (2) only two of the four plaintiffs were successful. Id. at 7-8. Accordingly, the court found the reasonable number of hours requested to be 100. The court further found that $125 per hour was an appropriate rate and awarded plaintiffs $12,500 in fees. After reviewing the record, we do not conclude that the court's findings are clearly erroneous. The issue before us then is whether the trial court abused its discretion in not departing from the lodestar due to plaintiffs' limited success.
 
 
 11
 As Hensley requires, after determining the lodestar, the court discussed the results plaintiffs had obtained. The amount of monetary damages in the present case was less important than the judgment against the police officers' conduct. The district court stated:
 
 
 12
 [The judgment is] important for the police as well as for the plaintiffs because it gives us an indication through these representatives of the community of what standards of police conduct should prevail, and that serves--I hope that serves--as some guidance for the police with respect to how they perform their difficult task.
 
 
 13
 Id. at 8-9. Because the district court found that the most important aspect of the judgment was the vindication of plaintiffs' civil rights and its message to the police department, we cannot conclude that the trial court's award was an abuse of discretion.
 
 
 14
 Thus, we need not address whether the case before us is one which might fall between the plurality and concurring opinions. The district court has provided a record sufficient to satisfy the concurrence. We cannot find error in the detailed findings of fact concerning the lodestar and the nature of plaintiffs' success nor that the trial court abused its discretion in awarding the fee.
 
 
 15
 The trial court's judgment is AFFIRMED.
 
 
 16
 BARRETT, Senior Circuit Judge, with whom TACHA and BALDOCK, Circuit Judges, join, dissenting:
 
 
 17
 Four black plaintiffs brought this 42 U.S.C. Sec. 1983 lawsuit alleging that, motivated by racial discrimination, two white police officers serving the City of Aurora, in response to a late evening noise complaint, entered the residence of appellee Perkins and there assaulted, battered, bruised and falsely arrested plaintiffs. Sued were the City of Aurora, its Mayor and City Council and the two Aurora police officers. The plaintiffs charged that the police officers' alleged intentional racially discriminatory actions were in accord with customs and policies of the City of Aurora, its Mayor and City Council, which "permitted its officers to beat, batter, bruise and abuse its black citizens...." (R., Vol. I, pp. 4, 9.) The facts were in sharp dispute. The police officers contended that it was they who were subjected to assault and battery at the hands of plaintiffs. Plaintiffs sought injunctive and declaratory relief and $2 million in damages, compensatory and punitive.
 
 
 18
 At the close of plaintiffs' case-in-chief, and upon motion for directed verdict, the City of Aurora, the Mayor and City Council were dismissed from the suit. We have held that "a directed verdict is justified 'only if the proof is all one way or overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion.' " Kiner v. Northcutt, 424 F.2d 222, 223 (10th Cir.1970). Furthermore, and significantly, the court eliminated injunctive and declaratory relief from plaintiffs' case. Appellees do not challenge those rulings. Thus, the case went forward only and exclusively for jury determination of the damages liability issue. The only real relief ever sought by the plaintiffs in this case was $2 million in damages, both compensatory and punitive. That was the posture of plaintiffs' case at all times.
 
 
 19
 The plaintiffs' complaint alleged the following "unlawful practices": The City of Aurora was intentionally engaged in unlawful deprivation of rights of black persons by utilizing its police department to commit assaults and batteries upon black persons, to invade the privacy of black persons, to unlawfully arrest black persons and by refusing "to accord to black persons any respect for their rights as human beings and as citizens of the United States." Plaintiffs' Complaint, Par. 7. The complaint alleged that the defendant police officers (1) "invaded" the privacy of plaintiffs' home on the evening of May 26, 1979, and (2) while in the home "battered, bruised and assaulted" the plaintiffs and (3) further subjected plaintiffs to "outrageous conduct," placed plaintiffs in "grave fear and mental anguish" and "in fear of grave bodily harm or loss of life." These allegations, if supported by the evidence in the eyes of the jury, could have resulted in a substantial monetary award. But these allegations did not stand up against the defendants' testimony. The police officers testified that it was they who had been subjected to assaults and batteries at the hands of the plaintiffs. It was in this context that the jury returned a compensatory damages award of $1.00 to only two of the four plaintiffs.
 
 
 20
 The majority opinion states that "the amount of monetary damages in the present case was less important than the judgment against the officers' conduct" in vindication of plaintiffs' civil rights and "its message to the police department." Opinion, p. 1550. What civil rights of the plaintiffs were violated? What sort of vindication is indicated by virtue of a $1.00 award? It cannot be seriously contended that the jury believed that these plaintiffs were subjected to assault and battery, false arrest and outrageous conduct. What, then, is the "message" the trial court and this court are conveying to the City of Aurora police officers? The question defies a logical, reasonable answer. It was not answered by the district court, except in general, undefined platitudes. If the police officers did wrong, they are left groping for guidance and direction.
 
 
 21
 This suit was at all times aimed solely at monetary damage relief. It utterly failed in that regard. Even so, the trial court erroneously refused to consider the fact that plaintiffs Fulton and Perkins recovered only the $1.00 nominal damage award in fixing plaintiffs' Sec. 1988 attorney fee award.[1]
 
 
 22
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court made it clear that in determining a Sec. 1988 fee award "[T]he extent of a plaintiff's success is a crucial factor," id. at 440, 103 S.Ct. at 1943 (underlining supplied) and "[w]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id. Here, the district court did not explain how the award of attorney fees of $12,500 was reasonable in light of the $1.00 nominal damage award to two of the four plaintiffs, well knowing that monetary relief was the only possible relief available on the evidence. The need for such an explanation was clearly spelled out in Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The Supreme Court there said:
 
 
 23
 Section 1988 encourages plaintiffs to bring meritorious civil rights suits.... Section 1988 authorizes courts to award only "reasonable" attorney's fees to prevailing parties. In Hensley v. Eckerhart, supra, we held that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." Id. [461 U.S.] at 436 [103 S.Ct. at 1941]. We specifically noted that prevailing at trial "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." Ibid.
 
 
 24
 473 U.S. at 11, 105 S.Ct. at 3018.
 
 
 25
 The plaintiffs in this case failed to present any evidence in support of their prayer for injunctive or declaratory relief. There was no evidence of any unconstitutional policy or custom against blacks. The plaintiffs' evidence totally failed to support their allegations that the City of Aurora, its Mayor and City Council and its police department conspired to deny blacks any constitutional rights, let alone the right to be free from assaults, batteries and false arrests allegedly practiced upon them. The district court granted the motion for directed verdict made by the City, the Mayor and the City Council at the close of the plaintiffs' case-in-chief because there was no evidence to support any of the plaintiffs' civil rights allegations lodged against those defendants. Those allegations were in fact groundless and frivolous. The only relief the plaintiffs could have obtained based upon their evidence was damages, and then only against the individual police officers.
 
 
 26
 If in fact the jury had believed the testimony of the plaintiffs to the effect that they had been assaulted, beaten, bruised, subjected to outrageous conduct and false arrest by the police officers, certainly a substantial award of monetary damages would have been made. The jury was not confronted with the problem of fixing a damage award for deprivation of the plaintiffs' rights of free speech or due process. Had the jury believed that these plaintiffs had been assaulted, beaten, bruised and falsely arrested by the police officers the injury was readily ascertainable in money damages just as awards are made in common law tort actions. The $1.00 nominal damage award tells us only that the two police officers did something improper but insignificant in terms of the allegations lodged.
 
 
 27
 The attorney fee award in this case is 6,225 times greater than the nominal damages awarded the two plaintiffs. If there were significant constitutional principles at stake in this case requiring monetary vindication, obviously the plaintiffs failed to so impress the jury. Nothing in this record indicates what "important civil and constitutional rights that cannot be valued in monetary terms," City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), were involved here. Furthermore, neither the district court nor the majority opinion have identified any important civil and constitutional rights vindicated by the $1.00 nominal damage awards in this case. Why? Because to do so necessarily means that the evidence must support the allegations that the police officers assaulted, beat, bruised and falsely arrested the plaintiffs. The $1.00 nominal damage award tells us in clear sounding language that the jury did not so find.
 
 
 28
 The City of Riverside v. Rivera case, unlike the case at bar, clearly served the "public interest." There, a large group of police officers entered a residence where a party was going on and, without arrest or search warrants, arrested the plaintiffs, who were Mexican Americans. Suit was brought under 42 U.S.C. Sec. 1983 for damages, and for declaratory and injunctive relief to prevent further "discriminatory harassment against Mexican Americans." The jury returned 37 individual verdicts against the City and five police officers. The plaintiffs did not pursue their request for injunctive and declaratory relief, but the district court made it clear that had the plaintiffs asked for it, such relief would have been granted. The court entered judgment in the amount of $33,350 representing compensatory and punitive damages. Thereafter, the court awarded plaintiffs' attorneys fees in amount of $245,456.25. In upholding this award, the Supreme Court held that a Sec. 1988 attorney fee award need not be proportionate to the damages awarded, although "results obtained" are a critical factor. In this regard, the court emphasized that the "public interest" had been served in preventing further discriminatory harassment of Mexican Americans. The district court found that the police officers' acts were motivated by a general hostility to the Chicano community and that the lawsuit was necessary to stop the unlawful institutional behavior involved in the case. In sharp contrast, no public interest has been identified by the district court or by the majority opinion in the case at bar. Significantly, in City of Riverside, Justice Powell, concurring, observed that where the suit is for private damages, the court must be guided by the success achieved.
 
 
 29
 I do not contend that there must be a yardstick guiding the district court in the allowance of attorney fees under Sec. 1988. Here, however, the district court refused to consider the "success achieved" factor in this suit for damages even though the plaintiffs had won only nominal damages.[2] This was clearly wrong. The trial court erroneously relied upon the following dictum in Ramos v. Lamm, 713 F.2d 546, 557 (10th Cir.1983):
 
 
 30
 Some courts have reduced fees when the thrust of the suit was for monetary recovery and the recovery was small compared to the fees counsel would have received if compensated at a normal rate for hours reasonably expended. We reject this practice.
 
 
 31
 The dictum in Ramos v. Lamm, which was the cornerstone of Judge McKay's dissenting opinion in Nephew v. City of Aurora, 766 F.2d 1464, clearly conflicts with express language in Hensley v. Eckerhart and City of Riverside v. Rivera. Significantly, Judge McKay does not cite to Ramos v. Lamm in his opinion for the en banc court, even though it was the basis for his dissent from the original panel opinion in this case and even though the district court stated that it was guided and governed by Ramos v. Lamm. (R., Vol. II, pp. 2, 8, 9.)
 
 
 32
 This case should be remanded to the district court as directed by a panel of this court in Nephew v. City of Aurora, supra, where we said:
 
 
 33
 By this holding we do not imply that an award of nominal damages necessarily means that a corresponding fee award must also be nominal. However, where, as here, a plaintiff seeks substantial damages but wins only nominal damages, the award must be reduced to account for the plaintiffs' very limited success.[3]
 
 
 34
 766 F.2d at 1467.
 
 
 
 [1]
 42 U.S.C. Sec. 1988 (1982) provides in pertinent part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [2]
 The police officers initially filed suit against plaintiffs in state court and plaintiffs counterclaimed. After trial in the federal case, the state action was dismissed by stipulation
 
 
 [3]
 The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill necessary to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases
 
 
 [1]
 "With respect to the amount of the award, I am governed by the Tenth Circuit opinion [Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983) ] ... I also agree with it ... It is not really so much how much money a jury decides to give ... to award ... as it is a determination in the court of law by a jury as to who was right under the circumstances, and labeling in this case the conduct of the police, these two police officers as it relates to these two plaintiffs who did prevail at trial, that in this circumstance the police were wrong. That's important." (R., Vol. II, p. 8.)
 
 
 [2]
 Most circuits agree that in a case where a constitutional violation is specifically identified (unlike the instant case) and a party is awarded nominal damages, such a party is in fact a prevailing party for attorney fee award purposes. Ganey v. Edwards, 759 F.2d 337 (4th Cir.1985) (Failure to award any actual or nominal damages did not prevent prisoner, who had been denied meaningful access to the courts, from being the "prevailing party" entitled to costs and attorney fees); Fast v. School Dist., 712 F.2d 379 (8th Cir.1983), rehearing en banc, 728 F.2d 1030 (8th Cir.1984) (Discharged teacher awarded $1.00 in nominal damages for specific showing of deprivation of property without due process of law in a class action is a "prevailing party" under 42 U.S.C. Sec. 1988); Skoda v. Fontani, 646 F.2d 1193 (7th Cir.1981) (Plaintiffs who won jury verdict of $1.00 in a 42 U.S.C. Sec. 1983 action were "prevailing parties" entitled to awards under Sec. 1988 where court makes a positive finding of a violation of civil rights); Huntley v. Community Sch. Bd. of Brooklyn, 579 F.2d 738 (2nd Cir.1978) (In civil rights action in which plaintiff recovered nominal damages of $100.00 for denial of procedural due process while conceding that termination of his employment was justified, there was no abuse of discretion in concluding that plaintiff at most won a "moral victory" of insufficient magnitude to warrant an award of attorney fees under 42 U.S.C. Sec. 1988); and Burt v. Abel, 585 F.2d 613 (4th Cir.1978) (The fact that plaintiff, a teacher discharged without notice or hearing constituting denial of procedural due process, may prevail on the merits yet recover only nominal damages shall in no way diminish his eligibility for attorney's fees under Sec. 1988, though it is one of the factors properly to be considered on the amount of such award.)