[No. 54796-8-I.    Division One.    January 9, 2006.]

SEABORN PILE DRIVING COMPANY, INC., *Appellant*, v. GAYLE
GLEW ET AL., *Respondents*.

*Mark P. Wittman*, for appellant.

*John W. Demco* and *Matthew F. Davis* (of *Demco Law Firm, P.S.*), for respondents.

¶1 BAKER, J. — In 1999, Seaborn Pile Driving Company, Inc., built a 70 foot pier for Gayle and Janet Glew. In February of 2000, Seaborn sued to collect $1,824.48 due for the work. The Glews denied owing anything to Seaborn and counterclaimed for breach of contract and violation of the Consumer Protection Act[1] (CPA) because the work had not been properly permitted.

¶2 Seaborn made a Civil Rule (CR) 68 offer of judgment for $4,500 in exchange for dismissal of the Glews' counterclaims. The offer did not mention costs or attorney fees, nor did it address Seaborn's collection claim. The Glews accepted the offer and made a separate motion for attorney fees.

¶3 Seaborn resisted the Glews' motion, arguing that it had intended the offer to include attorney fees. The trial court awarded the Glews attorney fees only for the time spent on their counterclaims. Seaborn appeals. Because the CR 68 offer did not include attorney fees, and was unequivocally accepted, we affirm.

I

¶4 In January of 1999, the Glews contracted with Seaborn to "repair" a pier at their recently purchased lakefront property. The remains of the old pier were in such disrepair as to require demolition and reconstruction. Seaborn proposed to demolish the remains of the old pier and build a new one, 6 feet by 60 feet, with an ell extension, 8 feet by 20 feet. The Glews signed a contract with Seaborn, and the work commenced. When Seaborn applied for permits from the city of Seattle, it represented the project as a repair of a preexisting pier that was between 50 feet and 60 feet long. The city believed this was a repair to a preexisting pier of the same length and granted the permits. Seaborn did not apply for an Army Corps of Engineers permit because there was a nationwide permit exempting rebuilding work. The construction was completed in late 1999; the

---

[1] Ch. 19.86 RCW.

pier as completed was 70 feet long. During the course of construction, there was a dispute over who should pay for an inshore pier section that covered some concrete rubble: Seaborn argued it was chargeable as additional work separate from the original contract price; the Glews argued that it was included in the contract price. While this dispute was brewing, the Glews became aware that Seaborn may not have gotten all the necessary permits.

¶5 Seaborn sued the Glews for $1,824.48 for the installation of the inshore pier section. The Glews counterclaimed for breach of contract, negligent misrepresentation, and CPA violations for Seaborn's failure to properly permit the pier. Discovery did not improve Seaborn's position. A 1990 survey of the subject property surfaced, revealing that the original pier was only 30 feet long, not 60 feet as Seaborn had represented to the city. In spring 2001, the Glews' attorney spoke with the Army Corps of Engineers. When the Corps learned the circumstances of the case, it notified the Glews that the 70 foot pier was built in violation of federal law because it was construction, not repair. When the city of Seattle learned this information, it rescinded its permits as well. Shortly thereafter, the parties reached an interim settlement agreement outlining the next steps that Seaborn would take to resolve the permitting problems, including "minor" revisions to the pier. However, that agreement was later rescinded on the basis of mutual mistake when it was revealed that the pier would have to be shortened by half to meet permitting requirements.

¶6 Two weeks before trial, Seaborn made an offer of judgment of $4,500. The offer stated:

> Seaborn Pile Driving, Inc., as the party defending the counterclaims of defendants Glew, submits this offer to have judgment to be taken against it for the sum of Four Thousand Five Hundred Dollars ($4,500), and tenders payment of said sum contemporaneous with this offer.
>
> This offer of judgment is made pursuant to Superior Court Civil Rule 68.

¶7 Five days later, Seaborn sent a follow-up letter proposing that it would also dismiss its initial collection claim (not included in the offer of judgment) "conditioned only upon your written confirmation on behalf of your clients that the offer of judgment is accepted." In a final note, Seaborn suggested, "Please address the utility of the parties simply stipulating to an order dismissing all claims and counterclaims in the action with prejudice and without costs." The Glews accepted the offer of judgment the same day, with no modifications or reservations.

¶8 Seaborn dismissed its original complaint, and the Glews moved for entry of judgment: $4,500 plus $63,700 for attorney fees. There were two attorney fee provisions in the construction contract. The first, regarding collection actions taken by Seaborn, defined "costs" to include attorney fees. The second, regarding litigation on the contract, defined attorney fees as separate from other costs. The Glews argued that they were entitled to attorney fees as the prevailing party on their counterclaims, under the second provision. The Glews received a judgment for $38,000 in attorney fees on their counterclaims.

¶9 Seaborn appeals the judgment for attorney fees. It also appeals the order rescinding the parties' settlement agreement, although it acknowledges that to reach this issue, this court must first conclude that the offer of judgment is a nullity. Because we decide against Seaborn on the offer of judgment issue, we do not address Seaborn's arguments concerning the trial court's rescission order.

## II

¶10 " 'Issues involving construction of [CR] 68 offers are reviewed de novo, [while] disputed factual findings concerning the circumstances under which the offer was made are usually reviewed for clear error.' "[2]

---

[2] *Herrington v. County of Sonoma*, 12 F.3d 901, 906 (9th Cir. 1993) (second alteration in original) (quoting *Erdman v. Cochise County*, 926 F.2d 877, 879 (9th Cir. 1991)).

¶11 CR 68 provides:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall enter judgment.[3]

¶12 If a CR 68 offer of judgment is silent on the issue of attorney fees, then the court must look to the underlying statute or contract provision. If the statute or contract defines attorney fees as part of costs, then the offer of judgment is inclusive of attorney fees even though they are not mentioned.[4] If attorney fees are defined as separate from costs under the statute or contract, then the court must award those fees in addition to the amount of the offer.[5]

¶13 Seaborn claims that the applicable contractual provision defines attorney fees as part of costs. The Seaborn-Glew contract in fact has two attorney fee provisions: (1) a collection clause that defines attorney fees as part of costs and (2) a litigation clause that defines them as separate from costs. The collection clause covers "all reasonable costs and charges incurred in collection." The litigation clause applies to "any arbitration or lawsuit." Seaborn argues that under RCW 4.84.330,[6] the collection clause "applies bilaterally to Glew's counterclaims." Under

---

[3] CR 68.

[4] *Marek v. Chesny*, 473 U.S. 1, 9, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985), *superseded by statute on other grounds as recognized in Fernando v. Hotel Nikko Saipan, Inc.*, 1992 U.S. Dist. LEXIS 10228, 58 Fair Empl. Prac. Cas. (BNA) 1340, 59 Empl. Prac. Dec. (CCH) ¶ 41,713.

[5] *Marek*, 473 U.S. at 7 (if an amount for costs is not specified in the offer, then the court is obliged to calculate costs accrued under the statute or contract and add that to the final judgment).

[6] "In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party

RCW 4.84.330, a contract clause that appears to award attorney fees to only one party is construed bilaterally to both parties.[7] But this does not mean that the collection clause applies to noncollection actions on the contract. If so, the litigation clause of the contract would be meaningless. The bilateral rule means that although the collection clause as written appears to apply only to Seaborn, the Glews are also entitled to attorney fees if they prevail in Seaborn's collection action. Seaborn's argument that the collection clause should apply to the Glews' counterclaims has no basis in law or fact. The counterclaims are for breach of contract. The fact that they were brought in the context of a suit to collect on the contract does not transform them into "costs and charges incurred in collection." The court correctly applied the litigation clause to the Glews' counterclaims. The litigation clause defines attorney fees as separate from costs; therefore Seaborn's offer of judgment did not include attorney fees.

¶14 Seaborn next contends that the offer of judgment is void because Seaborn intended its offer to include attorney fees, and therefore there was no mutual assent. Seaborn relies principally on *Hodge v. Development Services of America*[8] to support its argument. In *Hodge*, the defendant made an offer of judgment that stated, " 'This offer shall include all costs and expenses.' "[9] Hodge returned a qualified acceptance that excluded " 'plaintiff's actual attorneys' fees as pled by plaintiff in her complaint and as provided by [statute].' "[10] Hodge then moved for and was awarded attorney fees in addition to the offer

---

specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." RCW 4.84.330.

[7] *Richter v. Trimberger*, 50 Wn. App. 780, 784, 750 P.2d 1279 (1988) (unilateral attorney fee provision is reciprocal to other party).

[8] 65 Wn. App. 576, 828 P.2d 1175 (1992).

[9] *Hodge*, 65 Wn. App. at 578.

[10] *Hodge*, 65 Wn. App. at 578.

amount.[11] On appeal, we reversed because Hodge's reply operated as a rejection and counteroffer, not an acceptance.[12] Seaborn mischaracterizes *Hodge* and *Radecki v. Amoco Oil Co.*[13] as standing for the proposition that an offeror's subjective intent overrides the express language of an offer of judgment. Those cases both turned on purported acceptances that were actually rejections and counteroffers, nullifying the contract's formation.[14] Here, the Glews did not qualify their acceptance; it was in every way a mirror image of the offer. *Hodge* and *Radecki* are inapplicable.

¶15 Seaborn also overlooks *Hennessy v. Daniels Law Office*,[15] which is more analogous to the present case than *Radecki* or *Hodge*. In *Hennessy*, the defendant made an offer of judgment of $1,000 that was accepted without reservation or qualification by the plaintiff, who then moved for attorney fees.[16] The *Hennessy* court agreed that the term "judgment" in the offer was ambiguous as to whether attorney fees were included but construed that ambiguity against the drafter.

> It is a longstanding principle of contract law that, absent parol evidence as to the meaning of an ambiguous term, ambiguous terms of a contract are construed against the drafter of the contract. Since Daniels drafted the offer, and the parties offered no extrinsic evidence with respect to the meaning of the offer, we construe the ambiguity in the contract against Daniels, and hold that Daniels is liable for attorney's fees.[17]

Seaborn's argument that its unexpressed intent to include attorney fees makes them unavailable to the Glews also

---

[11] *Hodge*, 65 Wn. App. at 578.

[12] *Hodge*, 65 Wn. App. at 581-82.

[13] 858 F.2d 397 (8th Cir. 1988).

[14] *Radecki*, 858 F.2d at 403; *Hodge*, 65 Wn. App. at 582.

[15] 270 F.3d 551 (8th Cir. 2001).

[16] *Hennessy*, 270 F.3d at 552.

[17] *Hennessy*, 270 F.3d at 553-54 (citation omitted).

ignores *Du K. Do v. Farmer*,[18] where we held that a separate attorney fee award was available to the CR 68 offeree, even when the judgment itself listed attorney fees as "$0." An offer of judgment under this line of cases may be nullified if there was a rejection and counteroffer by the offeree, but it is valid if the offer is unequivocally accepted. This case falls under the latter rule of law.

¶16 Also, Seaborn ignores a basic contractual interpretation rule. A court can consider extrinsic evidence as an aid to interpretation of the words of a contract, but it cannot import an unexpressed intention of one of the parties into the writing.[19] Here, the extrinsic evidence indicates that the offer did not include attorney fees, considering: (1) the low amount of the offer;[20] (2) the lack of any language indicating that attorney fees were included;[21] (3) the offer did not dismiss the entire matter, but only the Glews' counterclaims;[22] (4) no subsequent attempt by Seaborn to clarify, revisit, or modify the offer until it was faced with a motion for attorney fees; and (5) a clear line of case law governing CR 68 offers and the issue of attorney fee provisions. Finally, after the offer of judgment was made, Seaborn requested that the Glews "address the utility of the parties simply dismissing all claims and counterclaims in the action with prejudice and without costs." Seaborn did not consider the offer of judgment the final word on the issue of other surviving claims or costs. The only "evidence" Seaborn offered to the trial court was its insistence that it

---

[18] 127 Wn. App. 180, 110 P.3d 840 (2005).

[19] *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990) (citing *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

[20] Seaborn offered $4,500 after four years of litigation on a contract that awards attorney fees to the prevailing party.

[21] The offer had no language about costs, fees, or any other inclusive language, such as "in full settlement of all claims" or "as complete resolution of this matter."

[22] Because the offer on its face did not include a dismissal of Seaborn's collection claim, and because (as Seaborn eloquently argues) the collection clause applies bilaterally, Seaborn must have known that the Glews could still be awarded attorney fees at trial if they prevailed on the collection claim. Seaborn did later offer to dismiss its collection claim in full settlement, but, by its own admission and the finding of fact of the court, this was separate from the offer of judgment.

intended attorney fees to be included. The trial court concluded that although Seaborn may have intended the offer to include attorney fees, that intention was not expressed in the contract as written. The court interpreted the contract correctly.

¶17 Seaborn contends the trial court's finding that "plaintiff and plaintiff's counsel intended the check for $4,500 and the offer of judgment to include attorney fees" is incompatible with its legal conclusion that the offer excluded fees. It is not. As explained above, Seaborn's unexpressed intent is not controlling. The settlement offer was for $4,500 exclusive of attorney fees by the operation of CR 68 and applicable case law. The trial court could not properly look to Seaborn's subjective intent for resolution of the issue.

¶18 In defense of its failure to specify that attorney fees were included, Seaborn correctly submits that defendants can make "lump sum" offers and need not provide a "breakdown" of what the offer includes.[23] However, this does not help Seaborn's case. The Ninth Circuit, following *Marek v. Chesny*,[24] concluded that when an underlying statute does not define attorney fees as part of costs, and the offer does not specify that attorney fees are included, then the offeree may seek attorney fees in a separate motion.[25] The court held that "a waiver or limitation on attorney fees must be clear and unambiguous"[26] and the defendant's lump sum offer did not constitute such a waiver.

> Consequently, while an offer to have judgment entered for a sum "including costs and attorney fees" may shift attorney fees when the underlying statute makes attorney fees part of costs (as was the case in *Marek*), it does not follow that an offer to have judgment entered for a sum "together with costs" has the same effect of being a lump-sum settlement, precluding the

---

[23] *Marek*, 473 U.S. at 7.

[24] 473 U.S. 1, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985).

[25] *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833 (9th Cir. 1997).

[26] *Nusom*, 122 F.3d at 832.

recovery of attorney fees, when the underlying statute does not make attorney fees a part of costs. In these circumstances, where the underlying statute does not make attorney fees part of costs, it is incumbent on the defendant making a Rule 68 offer to state clearly that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs.[27]

¶19 The cases that follow *Marek* make one principle abundantly clear: although a CR 68 offer need not be a laundry list of everything that the offer includes, a wise offeror will expressly state that the offer includes attorney fees. If not, and if the underlying statute or contract does not define attorney fees as part of the costs, the offeree can seek those fees in addition to the amount of the offer.[28] Seaborn, as the maker of the offer, should have availed itself of the chance to contravene the CR 68 default rule. Any ambiguity in the lump sum offer of judgment is construed against Seaborn.[29]

■ ¶20 Seaborn next argues that the Glews should not have received an attorney fee award relating to the collection action. There is no evidence that the Glews were awarded fees on that claim. The trial court reduced their award from the $63,700 requested to $38,000 and specified that only the fees relating to the counterclaims were included.

■ ¶21 Seaborn also argues that the Glews should not have received fees related to efforts to enforce or rescind the settlement agreement because it contained no attorney fee

---

[27] *Nusom*, 122 F.3d at 834.

[28] *See Hodge*, 65 Wn. App. at 584 ("[I]t would be prudent practice and we strongly recommend that where a defendant intends that his offer shall include any attorneys' fees provided for in the underlying statute he expressly so state."); and *Nusom*, 122 F.3d at 834 ("In these circumstances, where the underlying statute does not make attorney fees part of costs, it is incumbent on the defendant making a Rule 68 offer to state clearly that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs.").

[29] *Nusom*, 122 F.3d at 833.

provision, citing *CPL, L.L.C. v. Conley*.[30] *CPL* involves parties who entered into a memorandum agreement out of court as an accord and satisfaction of a prior out-of-court contract dispute.[31] When one of the parties breached the memorandum agreement, the other sued to enforce it.[32] Although the original contract had an attorney fees provision, the memorandum agreement did not. Because the lawsuit was brought under the memorandum agreement, the terms of that agreement governed the suit. Our Division Two held that the attorney fee provision in the original contract did not apply to the lawsuit.[33]

¶22 *CPL* is inapplicable to this case. The Glew-Seaborn interim settlement agreement was an attempt to memorialize the next steps in the litigation, not an accord and satisfaction of the previous contract. Also, the settlement agreement contained disclaimers that if the parties could not agree on particular cost allocations, the parties could still "litigate their claims in the pending legal action." No claims were dismissed as a result of the settlement agreement, and subsequent rescission of that agreement was brought within the context of the original lawsuit, not in a separate action. The dispute over the settlement agreement was a dispute under the original contract. The trial court properly awarded the Glews' attorney fees relating to the settlement agreement and subsequent rescission.

¶23 The remaining assignments of error relate to the trial court's rescission of the interim settlement agreement. We do not reach this issue because the offer of judgment is effective and its entry "excuses all prior errors," if any.[34]

---

[30] 110 Wn. App. 786, 40 P.3d 679 (2002).

[31] *CPL*, 110 Wn. App. at 789-90.

[32] *CPL*, 110 Wn. App. at 790.

[33] *CPL*, 110 Wn. App. at 797-98.

[34] *Wash. Asphalt Co. v. Harold Kaeser Co.*, 51 Wn.2d 89, 91, 316 P.2d 126 (1957).

¶24 The trial court correctly awarded attorney fees to the Glews as the prevailing party on their counterclaim under the litigation clause of the contract.

¶25 Affirmed.

AGID and SCHINDLER, JJ., concur.

Review denied at 158 Wn.2d 1027 (2007).